MENEFEE v. BERING MFG. CO.
(No. 7876.)

(Court of Civil Appeals of Texas. Ft. Worth. March 7, 1914. Motion for Leave to File Motion for Rehearing Denied April 11, 1914.)

1. EVIDENCE (§ 178*)—TELEGRAM — ADMISSIBILITY.

A telegram received by a party in response to a letter addressed and mailed to the adverse party is properly received in evidence as against the adverse party who purported to have signed the telegram without other evidence that he had signed it except that disclosed by the face of the telegram, where the original telegrams of the company transmitting them had been destroyed pursuant to orders of the Interstate Commerce Commission.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 580–594; Dec. Dig. § 178.*]

2. MONEY PAID (§ 9*)—PERSONS LIABLE—CONTRACTS—EVIDENCE.

Where an action for money paid for freight, unloading, and demurrage charges, was based on defendant's implied promise to reimburse plaintiff, and the undisputed testimony of a witness showed that defendant had agreed to pay the same and that he never questioned his liability, a judgment for plaintiff was authorized, though a telegram from defendant to plaintiff directed unloading and promised reimbursement for "freight charges," which term must have been intended to include all the charges sued for.

[Ed. Note.—For other cases, see Money Paid, Cent. Dig. §§ 27–29; Dec. Dig. § 9.*]

3. TRIAL (§ 139*)—PEREMPTORY INSTRUCTIONS—WHEN AUTHORIZED.

Where plaintiff under all the evidence was entitled to a recovery of a part of the sum demanded, if not the entire amount demanded, a peremptory instruction for defendant was properly denied.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 332, 333, 338–341, 365; Dec. Dig. § 139.*]

Error to District Court, Tarrant County; R. H. Buck, Judge.

Action by the Bering Manufacturing Company against O. R. Menefee. There was a judgment for plaintiff, and defendant brings error. Affirmed.

Wray & Mayer, of Ft. Worth, for plaintiff in error. Gillespie & Altman, of Ft. Worth, for defendant in error.

DUNKLIN, J. The Bering Manufacturing Company entered into a contract with O. R. Menefee for the purchase from him of a lot of railroad ties to be shipped to a certain place. Menefee shipped some 17 cars of ties in excess of the amount ordered by the purchaser, who declined to receive them. The ties contained in the excess shipment were held by the railroad company at the place of destination awaiting delivery and the payment of freight, unloading, and demurrage charges. Finally, the Bering Manufacturing Company paid those charges to the railroad company and instituted this suit to recover the same of Menefee, alleging the facts above recited, and further that it paid the charges not only for the use and benefit of Menefee, for which he impliedly agreed to reimburse it, but also at his special instance and request and upon his express promise to reimburse plaintiff for such expenditures. From a judgment in favor of the plaintiff for $2,231.50 freight, $167.25 demurrage charges, and $95.-21 expenses for unloading, aggregating $2,-493.97, the defendant has prosecuted this writ of error.

The principal controversy upon the trial was whether Menefee was liable for the demurrage and unloading charges, or whether his liability was confined to the amount paid by plaintiff for freight only.

It seems that prior to the payment by plaintiff of the charges in controversy there had been considerable correspondence between the parties relative to the payment of the charges in controversy. What purported to be a part of this correspondence was a telegram addressed to plaintiff's manager at Dallas, Tex., dated at Ft. Worth, Tex., with defendant's name signed thereto, reading as follows: "Unload our ties. Will reimburse you freight charges." This telegram was admitted in evidence over defendant's objection that there was no proof other than appears on the face of the telegram that Menefee sent it. The telegram was dated December 22, 1909, and the manager who received it testified that it was a reply to the following letter written by him as manager for plaintiff December 21, 1909: "Menefee Bros., Fort Worth, Texas—Gentlemen: Referring to conversation had with you about the ties rejected by Gulf, Texas & Western Ry., beg to state we have been working continually on this matter since we saw you, and now have the matter where we can get the ties unloaded and held for adjustment, provided the freight and unloading charges are immediately refunded the Ry. Co.—that is, they will draw on us for the amount. This seems to be the best adjustment that can be reached, and if it is agreeable to you, we want you to give us your written authority to have the

cars unloaded and held for further adjustment and your statement that we shall immediately draw on you for the charges for unloading, and freight, demurrage, etc. Unless you wish to do this, we shall simply have to return you invoices for all cars refused and charge same back to you, and you can refund amounts we may over paid you. Please let me hear from you at once, as this matter cannot be allowed to drag further. I think there is small doubt the adjustment above suggested will be the easiest way out as by unloading the cars we will stop charges, and when the matter is finally adjusted we will then pay for the ties. Bering Manufacturing Company."

Dixon, plaintiff's manager, testified without contradiction that, shortly before he wrote the letter above referred to and received the telegram, he had a conversation with the defendant, during which conversation the latter promised to pay the charges for unloading and for demurrage as well as for freight, and that after those charges had been paid Menefee never questioned his liability therefor; defendant did not testify upon the trial at all.

[1] It further appears that the manager of the telegraph office from which the telegram was sent to plaintiff's manager at Dallas testified that the original of that telegram had been destroyed in obedience to a regulation established by the Interstate Commerce Commission requiring the destruction of all original telegrams more than one year old. Under the circumstances recited above, we are of the opinion that there was no error in admitting the telegram. International Harvester Co. v. Campbell, 43 Tex. Civ. App. 421, 96 S. W. 93; Ullman-Lewis Co v. Babcock, 63 Tex. 68.

It is insisted that the manager, Dixon, did not testify expressly that he mailed the letter copied above in the United States mail, properly stamped and addressed to the defendant, and that therefore the letter could not be considered in determining whether or not a proper predicate had been laid for the introduction of the telegram. A sufficient answer to this is that it does not appear that any objection was urged to the introduction of the letter, and further that it was quite apparent from Dixon's testimony that the letter was in fact sent through the mail according to the usual custom.

[2] The court charged the jury as follows: "If you find and believe from a preponderance of the evidence in this case that on or prior to December 22, 1909, the defendant requested the plaintiff or requested Wm. Dixon, as manager of the plaintiff, Bering Manufacturing Company, to pay the freight charges on 17 cars of ties shipped the Gulf, Texas & Western Railway Company, by said defendant, and in the name of and for the benefit of plaintiff, and that said defendant, O. R. Menefee, promised and agreed to reimburse said plaintiff for the amount so paid out by it, then your verdict will be for the plaintiff as follows: For per diem or demurrage charges $167.25; for freight $2,231.51; and for cost of unloading, $95.21—making a total of $2,493.97. But if you do not so find and believe from a preponderance of the evidence, your verdict will be for the defendant." Under an assignment of error addressed to the charge is the following proposition: "If it be conceded that the telegram was properly in evidence, then the basis of the plaintiff's suit was its contents, and inasmuch as it only contained a proposition to reimburse the defendant in error in the payment of freight, the submission of the item of demurrage and charges for unloading was error."

The cause of action alleged in plaintiff's petition was as indicated above; it was not based upon the contents of the telegram. In view of the letter to which the telegram was a reply, the undisputed testimony of Dixon that the defendant shortly prior to the date of the telegram agreed to pay the demurrage and unloading charges, as well as the freight, that defendant never at any time after the same were paid questioned his liability therefor, and the further fact that those charges were owing by the defendant and not by the plaintiff, we are of the opinion that the language "freight charge," used in the telegram, was meant to include all of the charges for which the suit was instituted.

[3] A further assignment is presented to the refusal of the court to give a peremptory instruction in favor of the defendant. This assignment must be overruled, for, if the telegram had not been introduced, then, under the undisputed testimony of Dixon that defendant had agreed to pay all of the charges, plaintiff would have been entitled to a peremptory instruction for a verdict in its favor for all of those charges; and, even if the telegram be construed as a limitation of Menefee's agreement to pay the freight charges only, the plaintiff would at least have been entitled to a recovery to that extent.

The judgment is affirmed.