**PANAMA–WILLIAMS, INC., Appellant,**

v.

**R. L. LIPSEY, Individually and d/b/a Lipsey, Inc., and Consolidated Pipe Line Contractors, Inc., and Gulf Refining Company, Appellees.**

**No. 17200.**

Court of Civil Appeals of Texas, Houston (1st Dist.).

Nov. 16, 1978.

Rehearing Denied Dec. 14, 1978.

Able & Coleman, P. C., Tom F. Coleman, Jr., Houston, for appellant.

Minter & Mahon, Gary D. Aguren, Houston, The Law Department, The Gulf Companies, O. Gordon Oldham, Houston, for appellees.

PEDEN, Justice.

Panama-Williams, Inc., plaintiff below, appeals from the granting of a summary judgment to defendants R. L. Lipsey, individually, Lipsey, Inc., Consolidated Pipe Line Contractors, Inc., and to Gulf Refining Company. The defendants' motion for summary judgment asserted that a purported oral joint venture agreement between Lipsey, Inc., and the appellant (1) was barred by the statute of frauds because it was not to be performed within one year, (2) was unenforceable because of vagueness and want of mutuality and (3) was unenforceable because Gulf failed to accept a joint bid that the appellant and Lipsey, Inc., had planned to submit. The appellant says that several issues of material fact were raised.

We review the allegations contained in the petition of the plaintiff (appellant): In July of 1976, R. L. Lipsey and his two companies entered into a joint venture agreement with the plaintiff at Lipsey's request whereby they would "bid for and joint venture" the performance of a contract to build a certain pipeline for the Gulf Refining Co. (the Lucas job). Gulf agreed to the bidding by the plaintiff and Lipsey, Inc. as joint venturers. Plaintiffs were to handle the job and make necessary equipment available; they would be compensated for use of their equipment and receive half of the profit from the job. Lipsey was on

Gulf's bid list but could not timely submit a bid without the plaintiff's help. Plaintiff examined the materials and forms furnished Lipsey by Gulf, surveyed the location, and prepared the bid, including hourly rates and labor on equipment to be used, on Gulf's forms. R. L. Lipsey, individually and on behalf of Lipsey, Inc., and Consolidated Pipe Line Contractors, Inc., secretly violating his fiduciary duties to the plaintiff, willfully and intentionally changed the last page of the bid to make the joint bid into a bid of his Consolidated Pipe Line Contractors, Inc., and that company was awarded the contract by Gulf. Plaintiff has tendered its performance of the joint venture agreement, as partially performed, but the defendants have refused such offer and anticipatorily breached the agreement. In the alternative, the plaintiff pleads unjust enrichment. It also seeks exemplary damages for the willful and intentional breach of the agreement for the purpose of injuring the plaintiffs.

It is uncontroverted that in early June, 1976, Gulf invited bids for the construction of the Lucas pipeline to be submitted on or before noon of July 19. Lipsey, Inc., was one of the original companies invited to bid on the Lucas job.

On or about July 14, Mr. Williams, one of the owners of Panama-Williams, Inc., asked Gulf's representative, Harold E. Evans, if Panama-Williams, Inc. might bid on the job. Evans said he replied "that the time was too short; that the job was already out; that the showing had taken place." A day or so later, according to Lipsey's deposition, Panama Shiflett suggested they "joint venture the thing" and he agreed, provided it was all right with Gulf. The deposition of Williams confirms this conversation, then relates that Williams asked Evans if Gulf would have any objection to the two companies' bidding the job as joint venturers, and Evans said he had no objection whatever.

Evans testified by deposition that he told Williams it would be all right for Panama-Williams to get in on the bidding with Lipsey and that he would like for Panama-Williams to handle it through Lipsey.

Williams' affidavit says that he, Shiflett (his fellow principal in Panama-Williams), and Lipsey worked together in preparing the bid and that it is the most important part of the job since it determines whether they will get the contract and, if so, will make a profit. Lipsey's deposition testimony, like that of Williams, recounts their having worked together in examining the site of the Lucas pipeline (it is more than five miles long) and in preparing the joint bid that Lipsey did not submit to Gulf as a joint bid. That bid and the following transmittal letter were signed by Williams for the appellant and by R. L. Lipsey, and taken by Lipsey for delivery to Gulf before the noon deadline on July 19:

Gulf Refining Company
Post Office Drawer 3706
Houston, Texas 77001
Attention: Mr. H. E. Evans
Gentlemen:
Having received your permission to so do, enclosed is the joint bid of LIPSEY, INC. AND PANAMA–WILLIAMS, INC. for the construction of approximately 27,658′ of 32″ O.D. Crude Oil Pipeline from Gulf's Lucas Station to Sun Oil Terminal Docks, located in Jefferson County, Texas.

You have in your permission financial and other data on both Companies submitting this bid. In addition, and in accordance with your bid request, we have asked our underwriters, Sweeney, Redden, and Tucker, agents for Safeco Insurance Company, to direct to you a statement to the effect that Safeco will issue performance and payment bond if required.

We have had a great deal of experience with a different form of bid and should appreciate your consideration of it as an alternate to the bid submitted. In this other form, we agree on a ceiling price for the job, then the work is done on a cost basis plus varying percentages on basic items, with savings shared 75% by you and 25% to us. If you are interested in this type of proposal, we can submit contracts embodying this theory for your perusal and attention.

We can move onto the job as soon as you are ready and can assure you that the work will receive the personal attention of the best personnel from both companies submitting this bid.

> Very truly yours,
> PANAMA–WILLIAMS, INC.
> By ——————————————
> LIPSEY, INC.
> By ——————————————

Lipsey arrived at Evans' office between 7:30 and 8 a. m. on July 19. Evans testified by deposition:

> . . . I don't think he had anything with him; any briefcase or anything of that sort. I don't recall having seen any envelope or briefcase.

> He told me, the first thing, when we started talking that he had messed up his bid forms and wanted to know if he could get some more. So I didn't see any reason why not. I asked one of the people in my office to go get him some.

> .   .   .   .   .

> Q   Then you had some more conversation with him; is that right?
> A   Yes. We passed a few pleasantries, I suppose. And then I told him if he was going to bid with some other contractor—or I may have said Panama-Williams, because Mr. Williams had called me. But at any rate, I told him if he was going to bid with some other contractor, that we want the thing set up to where there would be a single responsibility to Gulf, and that we would want that to be Lipsey since he was the one that we had been dealing with in our earlier relations on this bidding process.

> He told me at that time that he had considered bidding the thing with Panama-Williams, but that he had decided to bid the job by himself, and that they had some unfortunate experiences with Mr. Shifflet sometime in the past and decided he did not want to work with him on this job if he got it.

Mr. Evans also stated that he didn't care how they set it up, 50–50 or 25–75. He said he did tell Mr. Williams his company could participate with Lipsey. He doesn't remember authorizing a joint bid or telling Williams that one would not be acceptable. If the joint bid had been submitted, he would have consulted his attorneys to see if it should have been accepted. Mr. Lipsey's version of what occurred that morning is substantially different:

> Well, on Monday morning, I carried it up there and asked Mr. Evans if it was all right to submit a joint venture bid. And he said, "No. You better submit your bid as Lipsey, Incorporated." I said, "I messed up these bid sheets. Give me some more."

The bid submitted by Lipsey, Inc., alone was subsequently accepted by Gulf. Upon learning that the joint bid had not been submitted, Panama-Williams filed this suit.

We must determine whether the summary judgment proof establishes as a matter of law that there is no genuine issue of fact as to one or more of the essential elements of the plaintiff's cause of action and that the moving party is entitled to judgment as a matter of law. *Gibbs v. General Motors Corp.,* 450 S.W.2d 827, 828 (Tex.1970). The appellant contends that genuine issues of fact are raised by the pleadings, interrogatories, and depositions and asserts six points of error in support of its position.

Four of the appellant's points of error are that Panama-Williams is not precluded from recovering by the statute of frauds, § 26.01, Texas Business and Commerce Code, because 1) the requirements of that statute are satisfied by a memorandum of the joint venture agreement that was signed by the party to be charged; 2) the statute does not apply to an oral partnership or joint venture agreement that is terminable at will or by law upon the occurrence of the events set out in Section 32 of Article 6132b, V.T.C.S., the Texas Uniform Partnership Act; 5) the statute of frauds does not apply to the breach of the fiduciary duty owed by the agent to his principal or to the joint venture; and 6) such statute does not apply to an agreement to acquire a contract or valuable right by a partner or a

joint venturer where there is a previous fiduciary relationship existing between the partners or joint venturers.

After examining all the summary judgment evidence, we have reached several conclusions:

1. It is established that the specifications considered by the parties who prepared the joint bid included provision 3250: "Contractor is to furnish a one year warranty assuring that contractor will, at its expense, make such repairs to the installations that become necessary due to faulty workmanship on the part of the contractor." Basing their bid on this provision brought the agreement to enter the joint venture to build the Lucas pipeline (if awarded the contract) within the statute of frauds because it was an agreement not in writing that was not to be performed within one year. It was held in *Page & Wirtz Construction Co. v. Van Doran Bri-Tico Co.*, 432 S.W.2d 731 (Tex.Civ.App.1968, writ ref'd n. r. e.):

> Obviously the year's guarantee would not start running until after the work was completed. The year's guarantee is as much a part of the contract as the performance of the masonry work. Even if defects appeared in the completed work and were corrected in less than a year, or if no defects appeared at all, the guarantee, which we believe to be a vital part of the oral contract, still would be effective for a year from the time of the completion of the work. Therefore, the agreement of which the statute speaks could not, by its own terms, be fully performed within " * * * the space of one year from the making thereof."

2. The summary judgment evidence shows that Lipsey accepted the appellant's offer to enter a joint venture to bid on the Lucas pipeline job provided it was all right with Gulf, and to build the pipeline if their joint bid was accepted. The evidence establishes that such bid was worked up by Shiflett, Williams and Lipsey but that Lipsey did not submit it to Gulf as a joint bid.

3. We cannot say that the joint venture agreement was void for vagueness as to essential terms. When an agreement is silent or obscure as to a particular subject, the law and usage become a portion of it and constitute a supplement to it. If the agreement is one peculiar to a certain trade, even though it is somewhat indefinite or inconsistent in its terms, we may interpret it in the light of the custom of the trade and the construction placed upon it by the parties. *Luling Oil & Gas Co. v. Humble Oil & Refining Co.*, 144 Tex. 475, 191 S.W.2d 716 (1945). Essential elements of a joint venture are a community of interest in the undertaking, a right in all parties to the transaction to share in the profits and an obligation to share in the losses. It is in the nature of a partnership but is usually limited to a particular transaction or enterprise, and whether the relationship exists generally depends upon the intention of the parties. *North Texas Lumber Co. v. Kaspar*, 415 S.W.2d 470 (Tex.Civ.App.1967, writ ref'd n. r. e.).

4. We find that genuine issues of material fact remain. The summary judgment evidence does not establish 1) that Gulf refused to accept the joint bid, or 2) that Lipsey reasonably inferred from what Evans said on July 19 that Gulf would not accept the joint bid, or 3) that Gulf would not award the contract to the joint bidders. Stated another way, a fact issue remains as to whether Lipsey's decision to withhold the joint bid was based solely on his own wishes and thus violated the joint venture agreement.

Although the appellant did not directly contradict the testimony of Lipsey and Evans as to the substance of their conversation in the office of Evans at Gulf on July 19, that testimony does not establish it as fact. Lipsey is, of course, a party defendant. Evans is not a party to the suit, but he should be considered an interested party because he is an employee of Gulf, which is a party efendant, and he participated in the events which are the subject of this suit. *Employers Liability Assurance Corp. v. Groninger & King*, 299 S.W.2d 175

(Tex.Civ.App.1956, writ ref. n. r. e.); 62 Tex.Jur.2d 447, Witnesses § 372. The testimony of Lipsey and Evans as to the substance of that conversation was not free from contradictions and inconsistencies. Since no representative of the appellant was present, it could not have been readily controverted. Rule 166–A, Texas Rules of Civil Procedure, as amended effective January 1, 1978 provides in part: "A summary judgment may be based on uncontroverted testimonial evidence of an interested witness . . . if the evidence is clear, positive and direct, otherwise credible and free from contradictions and inconsistencies, and could have been readily controverted."

We overrule the appellant's first point of error. We think it clear that the bid proposal and the transmittal letter to Mr. Evans, set out above, do not sufficiently record the essentials of the oral joint venture agreement between Lipsey, Inc., and Panama-Williams, Inc., to satisfy the statute of frauds. *Gruss v. Cummins,* 329 S.W.2d 496, 502 (Tex.Civ.App.1959, writ ref'd n. r. e.).

Appellant's fifth point of error asserts that it is not precluded from recovering by the statute of frauds because the statute does not apply to the breach of the fiduciary duty owed by one joint venturer to another or by an agent to his principal.

The general rule in an analogous situation is that a constructive trust escapes the statute of frauds requirement that land titles must not rest in parol, but if they are to do so, there must be actual fraud or strict proof of a prior confidential relationship and unfair conduct or unjust enrichment of the part of the wrongdoer. *Randkin v. Naftalis,* 557 S.W.2d 940 (Tex.1977), citing *Tyra v. Woodson,* 495 S.W.2d 211 (Tex.1973) and *Consolidated Gas & Equipment Co. v. Thompson,* 405 S.W.2d 333 (Tex. 1966). The facts of our case do not give rise to a constructive trust since recovery is sought against unidentifiable cash proceeds, and neither the plaintiff's pleadings nor the summary judgment evidence raises the issue of fraud. Although the form of constructive trust is not available, we find no

logical reason why under the facts of this case, equitable relief must be denied to the appellant's claim against part of Lipsey's profits from the Lucas job. ". . . if the defendant has made a profit through the violation of a duty to the plaintiff to whom he is in a fiduciary relation, he can be compelled to surrender the profit to the plaintiff, although the profit was not made at the expense of the plaintiff. "Restatement of Restitution, Section 160, Comment *d* at 644. We consider, however, that if equitable relief is to be granted, the court must observe the stringent prerequisites imposed by the Texas Supreme Court to the enforcement of oral agreements to avoid abrogating the statute of frauds. *Meadows v. Bierschwale,* 516 S.W.2d 125 (Tex.1974). Appellant's fifth point of error is based on the fiduciary relationship arising from the agreement made the basis of this suit and not from any prior relationship. *Tyra v. Woodson,* supra, points out the requirement that a fiduciary relationship must have existed before, and apart from, the agreement made the basis of the suit. We overrule the fifth point.

Appellant's sixth point is similar to its fifth one but it adds the assertion that a previous fiduciary relationship had existed between the parties.

Although we understood appellant's counsel to state during oral argument that it was on the fiduciary relationship arising from the joint venture in question that reliance was being placed, we do not consider its sixth point to have been withdrawn.

The facts of this case bring this point within the rule stated in *"Moore" Burger, Inc. v. Phillips Petroleum Co.,* 492 S.W.2d 934 (Tex.1972) and *Nichols v. Smith,* 507 S.W.2d 518 (Tex.1974). In each of those cases, the summary judgment evidence established an affirmative defense as a matter of law, so the plaintiff then had the burden of adducing evidence raising an issue of fact that would serve to avoid such affirmative defense. In *"Moore" Burger,* the plaintiff's issue was one of promissory

estoppel, and in *Nichols v. Smith,* it was one of fraudulent concealment. In our case, we have held that the affirmative defense of statute of frauds was established. The appellant had the burden of introducing summary judgment evidence to raise an issue of fact as to a prior fiduciary relationship between the joint venturers. To raise such an issue, the appellant must rely on the deposition testimony of one of its principals, Panama Shiflett. Some excerpts from the deposition are:

. . . I've did business with this character (Lipsey) before on a handshake and made my word good . . . I never thought this would have happened . . . It hurts me. I raised the boy . . . I brought him in on a handshake and made all my word good to him. I cannot understand . . .

Hell, he worked for me. I brought him up in the pipeline. I have got some of his brothers working for me now . . .. Well, let me get back there just a little bit . . .. Williams helped him with a little old contract . . . for Dow. He didn't know how to put it together . . . We even gave him a bid price . . . and he got the job.

. . . I've give him $300,000 worth of equipment rental business a year and bailed him out when he had his divorce. He was working for me . . . Lipsey I thought, was a friend of mine. Three or four fellows told me he would do it. I never believed that.

I let him do twelve miles out there and paid him $150,000. and he had no books on it . . . He's got no nobody else but the hands that work for me . . my office people, everybody else, the whole bunch.

As we have noted, there must be strict proof of a prior confidential relationship (and unfair conduct or unjust enrichment on the part of the wrongdoer) if one is to defeat the purposes of the statute of frauds by showing a constructive trust. *Rankin v. Naftalis,* supra, at page 944. In *Fitz-Gerald v. Hull,* 150 Tex. 39, 237 S.W.2d 256 (1951) at page 261 the court stated:

While a confidential or fiduciary relationship does not in itself give rise to a constructive trust, an abuse of confidence rendering the acquisition or retention of property by one person unconscionable against another suffices generally to ground equitable relief in the form of the declaration and enforcement of a constructive trust, *and the courts are careful not to limit the rule or the scope of its application by a narrow definition of fiduciary or confidential relationships protected by it. An abuse of confidence within the rule may be an abuse of either a technical fiduciary relationship or of an informal relationship where one person trusts in and relies upon another whether the relation is moral, social, domestic or merely a personal one.* § 225, 54 Am.Jur. "Trusts", p. 173 (emphasis added)

The plaintiff-appellant alleged in a supplemental petition that Lipsey, Inc., and Consolidated Pipe Line Contractors, Inc., are each the alter ego of R. L. Lipsey and are wholly owned or controlled by him.

We hold that Mr. Shiflett's testimony raised a fact issue as to a prior confidential relationship between the principals of Panama-Williams and Lipsey. It was repeated in *Thigpen v. Locke,* 363 S.W.2d 247 at 253 (Tex.1962) that a relationship of trust and confidence may be shown to arise informally from purely personal relationships. We consider that in our case there was such evidence of justifiable trust and confidence as to raise a fact issue of the creation of a fiduciary relationship. We cannot say it was no more than the debtor-creditor relationship found by the court in *Thigpen v. Locke,* supra.

The appellant's fourth point of error is that under the pleadings and the summary judgment evidence a fact issue was raised as to Gulf's liability to the appellant for A) breach of agreement with the appellant, B) tortious interference with contract, and C) conspiracy between Gulf and Lipsey to violate Lipsey's fiduciary duty as an agent to Panama-Williams, Inc., and/or M. E. Shiflett and/or M. S. Williams.

The appellant alleged in its supplemental petition that Gulf, acting through its agent, servant and employee, H. G. Evans, represented to the appellant that appellant might participate in bidding with Lipsey, Inc., and that Gulf had no objection to appellant's building the pipeline with Lipsey, Inc. That based on such representations, the appellant entered into a joint venture agreement with Lipsey for the bidding and, if successful, for building the pipeline. That thereafter, Gulf breached its agreement to let appellant bid jointly with Lipsey and interfered with appellant's contractual relationship with Lipsey.

The oral joint venture agreement was neither void nor an illegal contract, and there was no public policy opposing it. The statute of frauds does not give third parties the right to interfere with the performance of oral contracts. *Clements v. Withers,* 437 S.W.2d 818 (Tex.1969). The defense of statute of frauds is not available to Gulf, since Gulf was not a party to it.

Mr. Evans testified by deposition of his conversation with Mr. Williams: "I told him it would be all right for them to get in on the bidding process with Mr. Lipsey."

The recollection of Mr. Williams was: "I asked Mr. Evans if he had any objection to our bidding the job as a joint venture with Mr. Lipsey, and Mr. Evans told me he had no objection whatever."

Mr. Lipsey testified: "Well, on Monday morning, I carried it up there and asked Mr. Evans if it was all right to submit a joint venture bid. And he said 'No. You better submit your bid as Lipsey, Incorporated.' I said, 'I messed up these bid sheets. Give me some more.'"

This evidence raises a fact issue as to whether Gulf agreed to permit Panama-Williams to submit a joint bid on the Lucas job with Lipsey, Inc. Gulf, pointing out that all parties were aware that any bids submitted were subject to Gulf's approval, argues that there could be no contract until Gulf accepted the joint bid, so there could be no breach of contract by Gulf.

In view of testimony by Evans indicating that the joint bid would not necessarily have been rejected plus the fact that the same bid (except that it was submitted by Lipsey alone) was the successful one, we sustain the appellant's position in point of error 4 that a fact issue was raised as to whether Gulf breached its agreement to permit the joint bid.

As to allegations of tortious interference with the joint venture agreement, the rule is that one is privileged to interfere with a contract between others when he does so in the bona fide exercise of his own rights or when he possesses an equal or superior interest to that of the plaintiff in the subject matter. *Black Lake Pipe Line Co. v. Union Construction Co.,* 538 S.W.2d 80 (Tex.1976); *Terry v. Zachry,* 272 S.W.2d 157 (Tex.Civ.App.1954, writ ref. n. r. e.).

We cannot say that the summary judgment evidence establishes as a matter of law that Gulf did not interfere with the appellant's contractual rights or that its interference, if any, was privileged. Nor can we say it has been established that Gulf and Lipsey did not conspire to violate Lipsey's fiduciary duties. There is evidence that Mr. Evans of Gulf was aware that appellant planned to submit a joint bid with Lipsey; the reason why Lipsey did not submit it has not been established.

Lipsey argues that the summary judgment evidence establishes that the joint venture agreement was subject to the condition precedent of acceptance of the joint bid by Gulf and that Gulf refused to accept it. We do not agree. It is agreed by all that the bid was not submitted in joint bid form, and we have held that the evidence does not prove that it would have been rejected in that form.

We reverse and remand the judgment of the trial court.

COLEMAN, C. J., did not participate.