**Gene GUYNN, d/b/a S & J Specialty Company and Ed Hodges, Appellants,**

v.

**CORPUS CHRISTI BANK & TRUST, Coastal Tubular Sales, Inc., Jack Trice, Japan Cotton Company, Inc. and Nichimen Company Ltd., Appellees.**

No. 1383.

Court of Civil Appeals of Texas, Corpus Christi.

Oct. 4, 1979.

Rehearing Denied Nov. 15, 1979.

Carl C. Chase, Corpus Christi, for appellant.

F. Marshall Boykin, III, Dudley B. Foy, Jr., Wood, Boykin & Wolter, Corpus Christi, for appellee.

Rick Rogers, Porter, Gonzalez & Rogers, Corpus Christi, for appellees.

Joe B. Harrison, Hubert A. Crouch, III, Wynne & Jaffe, Dallas, for appellants.

## OPINION

YOUNG, Justice.

This is an appeal from the granting of an instructed verdict. Gene Guynn (Guynn) d/b/a S & J Specialty Company (S & J) and his partner Ed Hodges (Hodges), appellants, brought suit against Corpus Christi Bank & Trust (Bank); Coastal Tubular Sales, Inc. (Coastal); Jack Trice, individually (Trice); Japan Cotton Company (Japan); Pete Sublett & Company, Inc. (Sublett); and Nichimen Company Ltd. (Nichimen), wherein appellants alleged several different causes of action in connection with a large purchase of high pressure N–80 oil field pipe. Trial was to the court with a jury. At the close of the appellants' case the trial court granted an instructed verdict in favor of each of the appellees herein. This appeal by the plaintiffs followed.

Among other things, plaintiffs alleged that prior to the transactions made the basis of this suit, Guynn (through S & J) had been in the business of buying and selling oil field tubular goods. The events culminating in this suit began, according to plaintiffs' petition, when the plaintiffs realized that the supply of oil field seamless tubing had become short in the continental United States. This shortage of pipe precipitated a trip to Taiwan by the plaintiffs where they obtained a firm offer of tubing as evidenced by a document attached to their petition.

This attached document, referred to as "Contract No. TKC–822/75", provided for the delivery of 900,000 feet of pipe to S & J at the port in Houston. Payment for the pipe was to be by an irrevocable and confirmed letter of credit through a first class bank and payable to Nichimen. If the letter of credit was not in Nichimen's hands by August 29, 1975, (Tokyo time) then the contract was to be automatically cancelled.

Later, plaintiffs alleged, they entered into a joint venture with Coastal through Trice, one of its officers, to purchase and sell the pipe. Coastal became obligated to secure the financing of the venture. Further, Trice and the Bank subsequently led plaintiffs to believe that the financing had been completed.

Then, according to plaintiffs' allegations, Coastal, with the wrongful help of the Bank, Japan and Nichimen, entered into a joint venture with Sublett. This joint venture resulted in the purchase of the pipe (which had been contracted for by the plaintiffs) by Coastal and Sublett, thereby excluding the plaintiffs from participation in the profits to be made from the sale of the pipe.

Guynn and Hodges also alleged that all the defendants tortiously interferred with the Nichimen contract, which action caused the contract to be cancelled and that the defendants conspired to use such contract for their own use and benefit. Guynn and Hodges further alleged that the bank violated its obligation to properly send, receive and deliver telex messages under 47 U.S. C.A. § 206 (1962) and § 605 (Supp.1979); that all the defendants conspired to defraud both Guynn and Hodges and to interfere with their contract, so that they could not realize the benefit of their contract; and that Guynn and Hodges were engaged in a joint venture with Trice and Coastal such that a fiduciary relationship existed which was breached by Trice. Plaintiffs prayed for damages, an accounting, and a constructive trust, or in the alternative the six cents per foot commission which had been provided for in the Coastal-Sublett joint venture agreement.

Appellant brings five points of error. Appellants' points 1, 2 and 3[1] are vague, and incorporate several concepts into one point of error, so we will look to the argument under these points to determine whether we can ascertain the precise nature of appellants' complaints. *Bass v. Metzger*, 569 S.W.2d 917, 923 (Tex.Civ.App.—Corpus Christi 1978, writ ref'd n. r. e.).

There is a voluminous record in this case consisting of over 1500 pages of testimony and exhibits. Much of the evidence appellants attempted to introduce at trial consisted of telexes of the parties concerning the purchase and sale of oil field pipe. Most of the telexes were excluded because the appellants did not properly establish the authenticity of the documents under Tex. Rev.Civ.Stat.Ann. art. 3737e (Supp.1978). No testimony was allowed concerning the contents of the excluded telexes.

Appellants' argument under points 1, 2 and 3 begins with a 42 page narrative summarizing the testimony of the entire trial. The summary identifies the witnesses called, explains some of the testimony elicited, and described testimony that was excluded. The only allegations of error in this 42 page statement are occasional references to Rule 182, T.R.C.P., which the appellants refer to as the "adverse party rule" and occasional references to the rule that "admissions against interest" are an exception to the hearsay rule.

Then beginning on page 53 of their brief, appellants make three general assertions. First, they assert that Rule 182, T.R.C.P., "governs the rules of *admissibility* of evidence, both from a testimony standpoint and from a documentary standpoint relating to adverse parties." (Emphasis added). Appellants further argue that Rule 182 is the basic rule of evidence regarding the testimony of an adverse party in a civil suit; that it gives the party adverse to the witness the right to introduce evidence upon any issue involved in such suit or proceeding without regard to the testimony of the adverse witness. Appellants then further assert that all of the complaints set out in the earlier portions of their brief are errors relating to the failure of the trial court to allow counsel for plaintiffs to introduce evidence within the provisions of Rule 182.

Second, appellants argue that the trial court should have admitted some of the excluded evidence because the evidence constituted testimony relating to violations of 47 U.S.C.A. §§ 206 and 605, supra.

Third, the appellants argue that the telexes and testimony excluded should have been admitted because the statements contained in the telexes and the testimony were those of co-conspirators; citing e. g. *Walter E. Heller & Company v. Barnes*, 412 S.W.2d 747, 757 (Tex.Civ.App.—El Paso 1967, writ ref'd n. r. e). These arguments, though, do not direct us to the evidence in the record on the points in the brief to which they apply. See Rule 418, T.R.C.P. Apparently, appellants are asking this Court to scan the 42 page narrative in their brief and also scan the record, with these three general rules (concerning Rule 182, U.S.C.A. violations and statement of co-conspirators) in mind, and determine whether any of them, if applied, would have provided for the admission of evidence in a situa-

1. "Point of Error Number One

The trial court was in error in refusing to grant plaintiff's motion for mistrial based upon the provisions of the Texas Rules of Civil Procedure, Rule 182, relating to the admission of evidence from adverse witnesses of the adverse corporate defendants and in refusing to allow evidence pursuant to Title 47, United States Code, section 605 and section 206, relating to the violation of such United States Code for the improper delivering of radio communications or the use of contents of same by defendants contrary to the receivers' rights.

Point of Error Number Two
The trial court erred in failing to follow the law relating to an action for conspiracy in the admission of evidence against the co-conspirators who are all adverse parties or adverse witnesses to the appellants.

Point of Error Number Three
The trial court was in error in failing to follow the law with regard to the admissibility of evidence against adverse witnesses of the adverse corporate parties with regard to the tortious interference by said parties to plaintiffs' contractual relationship."

tion where it was excluded. The only apparent direction we have in this regard is the appellants' statement that all the complaints in the brief are errors relating to Rule 182.

■ Rule 418, T.R.C.P., provides standards for the proper briefing of cases. It has long been the policy of this Court to indulge a liberal construction of the briefing rules in favor of the sufficiency of the brief, and to give effect thereto if we, from an examination of the statement under each point (or grouped points), can determine with some degree of certainty the nature of the complaint raised by the point. *Rio Delta Land Co. v. Johnson*, 566 S.W.2d 710, 713 (Tex.Civ.App.—Corpus Christi 1978, writ ref'd n. r. e.). We find it would be a monumental task indeed to apply the appellants' three general assertions to each and every item of excluded evidence complained of in appellants' brief. The points are too unspecific to guide this Court to a sufficient understanding of errors asserted.

■ Even so, if these points could somehow be properly considered by us, we would find no error. Rule 182 is not a rule which controls the admissibility of specific items of evidence. While it does relate to whether a party can introduce impeaching testimony concerning an adverse witness' statements, it is primarily intended as a rule of procedure. Rule 182 does not give a party unbridled power to introduce any document or elicit any testimony that might be relevant to his case. Rule 182 was intended to work in conjunction with, rather than as a replacement for, the standard rules of evidence. Also 47 U.S.C.A. §§ 206 and 605, supra, are not rules of evidence; thus, the only bearing these provisions would have upon the admissibility of any particular document or testimony would be their relevance or materiality to the issues at hand. Finally, the rule with regard to the statements of co-conspirators is, indeed, a rule which controls the admissibility of evidence.

See *Walter E. Heller & Company v. Barnes*, supra at 757. This rule, however, by itself, does not provide for the admission of any document that has not been properly authenticated as originated by the co-conspirator charged with having drafted the statement therein. Compare Pope and Hampton, Presenting and Excluding Evidence, 9 Tex.Tech.L.Rev. 403, 416 (1978). Appellants also mentioned "admissions against interest." While we are unsure whether the appellants are referring to declarations against interest or admissions, we note that though a declaration is against one's interest, if it is made in the form of a document, then there must be some form of proof which indicates that the purported declarant was the one making such document. Compare *Menefee v. Bering Mfg. Co.*, 166 S.W. 365 (Tex.Civ.App.—Fort Worth 1914, no writ); see Article 3737e, supra. Appellants' points 1, 2 and 3 are overruled.

Appellants' point 4[2] contends that because they raised fact issues the trial court erred in granting the instructed verdict for the appellees.

At the close of the appellants' case, each of the appellees presented a motion for instructed verdict, each of which included at least ten reasons why the trial court should grant the motion. The trial court granted each of the motions for instructed verdict, thereby ordering that the appellants take nothing. No specific reasons were mentioned in the judgment why the trial court granted the motions for instructed verdict.

■ Where an instructed verdict is granted, there are certain presumptions which a reviewing court must follow in determining whether there are grounds for reversal. First and foremost, the appellate court must undertake an examination of the facts following the presumption that all evidence must be reviewed in a light most favorable to the appellant. *Constant v. Howe*, 436 S.W.2d 115 (Tex.Sup.1968). The court must: (1) accept as true all evidence

---

2.   "Point of Error Number Four
The trial court was in error granting an instructed verdict for the appellees at the close of

Plaintiffs' evidence in that fact issues were raised for the jury's determination."

supporting the appellant's allegations; (2) resolve all conflicts and inconsistencies in favor of the appellant; and (3) draw all inferences favorable to the appellant. *Constant v. Howe,* supra; *Thornhill v. Sharpstown Dodge Sales, Inc.,* 546 S.W.2d 151 (Tex.Civ.App.—Beaumont 1976, no writ). Further, if there is no evidence of probative force establishing or tending to establish one or more of the ultimate fact elements involved in the contract relied upon, or if the slight probative force of testimony with reference thereto is so weak that it only raises a mere surmise or suspicion of the existence of some or all of the essential facts sought to be established, then it is the duty of the trial court to withdraw the case from the jury or to instruct the verdict. *South Texas Water Co. v. Bieri,* 247 S.W.2d 268 (Tex.Civ.App.—Galveston 1952, writ ref'd n. r. e.); *Perren v. Baker Hotel of Dallas, Inc.,* 228 S.W.2d 311 (Tex.Civ.App.—Waco 1950, no writ); see also 3 McDonald, Texas Civil Practice § 11.28.1 (1970).

■ There are also certain presumptions which establish the burden upon the appellant during the review of an instructed verdict. The burden rests upon the appellant to establish that he has presented "some evidence" on each and every element of the various causes of action in the pleadings. 3 McDonald, Texas Civil Practice § 11.28.1 (1970). The question of what is "some evidence" is controlled by the scintilla rule set out in *Joske v. Irvine,* 91 Tex. 574, 44 S.W. 1059 (1898); Calvert, "No Evidence" and "Insufficient Evidence" Points of Error, 38 Tex.L.Rev. 361 (1960).

■ The appellant also has the burden of showing to the appellate court that the instructed verdict could not be supported on any of the grounds set out in the appellee's motion. A case which clearly demonstrates this burden is *McKelvy v. Barber,* 381 S.W.2d 59, 62 (Tex.Sup.1964). There, the trial court granted the defendant's motion for instructed verdict based upon twenty numbered paragraphs, asserting two basic independent grounds for granting the instructed verdict. In granting the instructed verdict the trial court did not recite the specific grounds for its decision but merely stated that it was of the opinion that the motion was well taken and should be granted. The Supreme Court at page 62 stated:

"To reverse the judgment of the trial court under these circumstances, it was necessary for petitioner to assume the appellate burden of establishing that the peremptory instruction cannot be supported on either of the grounds set out in the motion. If he has waived the right to question either of such grounds or if either is sound, the judgment of the trial court must be affirmed."

See also *Dunham and Ross Co. v. Stevens,* 538 S.W.2d 212, 214 (Tex.Civ.App.—Waco 1976, no writ). Consequently, it was appellants' burden herein to address the contentions in the appellees' motions for instructed verdict and show why they cannot serve as a basis for the granting of such motions.

■ The Bank stated in its motion for instructed verdict at lease five reasons why the appellants' cause of action for violations of 47 U.S.C.A. §§ 206, 605, supra, was without merit. In particular the Bank alleged that the trial court was without jurisdiction to hear a cause of action under Title 47 and that appellants had failed to prove certain evidentiary elements of this particular cause. Appellants have failed to challenge these reasons for instructed verdict on appeal and therefore have failed to meet their appellate burden. Therefore this theory of recovery against Bank & Trust is waived.

■ One of Trice's reasons for instructed verdict was that he was not personally liable to the appellants because all of the acts herein were conducted as Coastal Tubular Sales rather than as Jack Trice individually. Again, appellants have not challenged this reason for instructed verdict and they thereby waive any cause of action against Trice.

■■ Appellants' cause of action for tortious interference with a contract requires proof that there was a contract subject to interference. *Armendariz v. Mora,* 553 S.W.2d 400, 404 (Tex.Civ.App.—El Paso 1977, writ ref'd n. r. e.). Appellants at-

tempted to introduce into evidence a purported contract (Contract No. TKC–822/75) which formed the basis of their law suit; however, they did not properly show the authenticity of the contract under Article 3737e, supra. Thus, no contract was ever entered into evidence. Consequently, the appellants failed to prove a necessary part of their cause of action for interference with a contract. The trial court properly instructed a verdict as to this cause of action in favor of all the appellees.

As to the cause of action for conspiracy to interfere with a contract, we also find a lack of evidence of certain elements. *In Schlumberger Well Surveying Corp. v. Nortex Oil & Gas Corp.*, 435 S.W.2d 854, 857 (Tex.Sup.1968), the Court stated that in order to prove a conspiracy:

"There must be an agreement or understanding between the conspirators to inflict a wrong against, or injury, on, another, a meeting of minds on the object or course of action, and some mutual mental action coupled with an intent to commit the act which results in injury; in short, there must be a preconceived plan and unity of design and purpose, for the common design is of the essence of the conspiracy."

In order to show a conspiracy to interfere with a contract it was incumbent upon the appellants to show that there was a contract with which the conspirators intended to interfere. Again, there was no evidence of such a contract in this case.

The first overt act which could have indicated a conspiracy was Guynn's testimony that on August 27, 1975, Mr. Vickers (president of Coastal) called him from Houston and offered to give him a six cents per foot commission rather than 50 percent of any profits made. The second overt act which could have shown a conspiracy was a telex sent on August 28, 1975, at some time after 6:00 p. m. But the evidence is undisputed that any contractual rights that Guynn had under his purported contract had already expired by this time in that he was required to send a letter of credit to Tokyo on or before August 29,

1975, Tokyo time. Tokyo time is fourteen hours ahead of time in Corpus Christi or Houston. Therefore, at 6:00 p. m. August 28, 1975, it was already August 29, 1975, in Tokyo and any rights under the purported contract had already expired. After reading the entire record we are unable to find that the overt acts mentioned above or any other evidence proved the elements of conspiracy to interfere with a contract.

Appellants' petition also sets out a cause of action for conspiracy to defraud. A review of the elements comprising a conspiracy to defraud must be undertaken before this Court can determine its applicability to the case at bar.

The Supreme Court in *Schlumberger* adopted this definition of a conspiracy to defraud from the Tennessee Supreme Court:

"A 'conspiracy to defraud' on the part of two or more persons means a *common purpose*, supported by a concerted action to defraud, *that each has the intent to do it*, and that it is common to each of them, and that each has the understanding that the other has that purpose." (Emphasis by Texas Supreme Court, 435 S.W.2d 854, 857, col. 1.)

In determining whether a conspiracy to defraud has occurred in a particular case, "[t]he evidence must do more than raise a suspicion. It must lead to belief." *Waco Drug Co. v. Hensley*, 34 S.W.2d 832 (Tex. Commn.App.1931, opinion adopted). The acts of a conspiracy must be established by full, clear, satisfactory, and convincing testimony. *Switzer v. Joseph*, 442 S.W.2d 845, 850 (Tex.Civ.App.—Austin 1969, no writ); *Gager v. Reeves*, 235 S.W.2d 688 (Tex.Civ. App.—Fort Worth 1950, writ ref'd n. r. e.).

Applying this definition of conspiracy to defraud to the case at bar, this Court finds no more than a scintilla of evidence under the standard set out in *Joske v. Irvine*, supra. The evidence would have to clearly establish the singular intent to defraud by each party, the common knowledge by all parties that each had such intent, and finally some concerted act to accomplish such fraud.

The fourth and final cause of action set forth by the appellants in their pleading is that of a breach of the fiduciary duty existing as a result of the alleged joint venture between Guynn and Coastal. Coastal in its motion for instructed verdict gave as one of its grounds the absence of any evidence of a joint venture between Guynn and Coastal. Once again a review of the essential elements required to prove a joint venture is necessary before we can determine if one existed between Guynn and Coastal. As to the cause of action alleged by appellants for breach of a fiduciary duty, there must be a joint venture from which the fiduciary duty arises.

There are four elements that must be present in order to have a joint venture: 1) community of interest; 2) agreement to share profits; 3) agreement to share losses; 4) mutual right to control or management of the enterprise. *Coastal Plains Development Corp. v. Micrea, Inc.*, 572 S.W.2d 285 (Tex.Sup.1978); *Panama-Williams, Inc. v. Lipsey*, 576 S.W.2d 426 (Tex.Civ.App.—Houston [1st Dist.] 1978, writ ref'd n. r. e.); *Chandler v. Herndon*, 450 S.W.2d 703 (Tex.Civ.App.—Corpus Christi 1970, writ ref'd n. r. e.). The key factor in determining the existence of a joint venture is the intent of the parties. *Panama-Williams, Inc. v. Lipsey*, supra at 431; *North Texas Lumber Co. v. Kaspar*, 415 S.W.2d 470 (Tex.Civ.App.—Dallas 1967, writ ref'd n. r. e.).

The appellants had the burden to prove the existence of the joint venture between Guynn and Coastal in the case before us. *Rogers v. Butler*, 563 S.W.2d 840 (Tex.Civ.App.—Texarkana 1978, writ ref'd n. r. e.); *Holman v. Dow*, 467 S.W.2d 547 (Tex.Civ.App.—Beaumont 1971, writ ref'd n. r. e.).

It appears from the statement of facts that the appellant failed to prove the existence of one of the elements required for the joint venture, that of community of interest. We have previously demonstrated in this opinion that the existence of a contract between Guynn and Coastal was not established at the trial. If no contract exists between the parties, there can be no community of interest in this particular case.

Appellants did not meet their burden of establishing the existence of a joint venture between appellants and Coastal, nor is there any evidence that a fiduciary relationship between Guynn and Trice was established. Therefore, it was not error to grant the instructed verdict. Appellants' point 4 is overruled.

There is some question raised by appellants' point 5 concerning whether this court may consider certain exhibits which were not made a part of the original record. At the trial these exhibits were offered, but over objection they were not admitted. Some of the excluded documents were put into the record by bill of exception and others were not; consequently, when the court reporter put the original record together these documents were excluded. Appellant then filed a Rule 377(d), T.R.C.P., motion to have the excluded exhibits included in the record on appeal. The trial court held a hearing on this motion and decided to leave the excluded exhibits out of the record. Appellant then sought a writ of mandamus in this Court to require the trial judge to order that the excluded documents be made a part of the record of this case. The mandamus action was rendered moot when the trial judge later ordered the court reporter to assemble the documents into a separate volume and send them to this Court with the following language on the cover:

"Certificate of the Trial Judge After a Rule 377(d) Hearing

This volume is not certified by me as constituting any part of the Statement of Facts in the above entitled and numbered cause."

Though the separate volume is headed in this manner, we think that the admissibility of every document which is shown by the statement of facts to have been offered and excluded may be considered by this Court. We recognize that a bill of exception must, in the case of excluded testimony, be devel-

oped if one intends to rely upon the exclusion as a basis for reversible error. *Gulf Paving Co. v. Lofstedt,* 144 Tex. 17, 188 S.W.2d 155 (1945). The formality of a bill of exception is not necessary, however, when the excluded testimony is a document, and the document was offered, considered by the parties, and rejected by the court. Compare *Pelton v. Cooke,* 209 S.W.2d 398 (Tex.Civ.App.—Fort Worth 1948, writ ref'd n. r. e.). Rule 372(*l*) T.R.C.P., states that anything occurring in open court or in chambers that is reported and so certified by the court reporter may be included in the statement of facts rather than in a bill of exception. We think the scope of this rule is broad enough to provide for the incorporation of excluded documents which were not "formally" offered after exclusion for a bill of exception. At any rate, we have before us now the matter subject to complaint. And we have considered the subject documents as part of the record in disposing of appellants' point 4. So appellants' point 5 is moot.

The judgment of the trial court is affirmed.