**Alex ORTIZ, Appellant,**

v.

**SANTA ROSA MEDICAL CENTER and Ben Moore, Jr., M.D., Appellees.**

**No. 04–84–00203–CV.**

Court of Appeals of Texas, San Antonio.

Dec. 11, 1985.

Rehearing Denied Dec. 30, 1985.

David M. Adkisson, San Antonio, for appellant.

Emilio M. Garza, Clemons, Spencer, Welmaker & Finck, Paul M. Green, San Antonio, for appellees.

Before ESQUIVEL, BUTTS and REEVES, JJ.

## OPINION

ESQUIVEL, Justice.

Appellant Alex Ortiz appeals from a March 9, 1984, judgment of the trial court granting defendant Ben Moore's motion for instructed verdict. We reverse and remand.

This is a medical malpractice action arising out of medical care rendered to plaintiff's decedent, Juanita Lucio, on February 18, 1979, in the emergency room of Santa Rosa Medical Center. Suit initially was filed against the Santa Rosa Medical Center, Ben Moore, M.D., and William D. Lane d/b/a Pulse Ambulance. Prior to trial, the ambulance company was voluntarily dismissed from the lawsuit by plaintiff. The case then proceeded to a jury trial.

At the close of the evidence both of the remaining defendants were granted an instructed verdict. Appellant perfected an appeal of the judgment rendered against him as to both defendants but subsequent-

ly dismissed his appeal as to Santa Rosa Medical Center.

Five points of error have been briefed by appellant for our consideration: whether the trial judge erred in granting defendant Moore's motion for an instructed verdict on the grounds that (1) there was no evidence to create a fact issue as to plaintiff's common law marriage; (2) there was evidence to establish the defendant's negligence; (3) there was no evidence to establish proximate cause between any negligent act of the defendant and the death of the decedent; (4) there was no evidence of damages; and (5) there was no evidence to support plaintiff's allegations of gross negligence. Appellee Moore has conceded in his brief on appeal that sufficient evidence was presented at trial to raise an issue of fact for the jury concerning his negligence. Therefore, we need not address appellant's second point of error.

■ The standard by which this Court reviews instructed verdicts is well known. We will view the evidence in the light most favorable to the non-moving party and will indulge him with every reasonable inference that properly may be drawn from the evidence. *Chilton v. Pioneer National Title Insurance Co.,* 554 S.W.2d 246, 248 (Tex.Civ.App.—Waco 1977, writ ref'd n.r. e.); *Joseph v. Jet Air Freight Corp.,* 479 S.W.2d 325, 327 (Tex.Civ.App.—Waco 1972, writ ref'd n.r.e.). All contrary evidence and inferences must be disregarded. *Henderson v. Travelers Insurance Co.,* 544 S.W.2d 649, 650 (Tex.1976).

■ The appellant has the burden of establishing on appeal that he has presented some evidence on each and every element of his cause of action and that the instructed verdict cannot be supported on any grounds set forth in the appellee's motion. *Guynn v. Corpus Christi Bank & Trust,* 589 S.W.2d 764 (Tex.Civ.App.—Corpus Christi 1979, writ dism'd). We will affirm the granting of the motion only where the evidence establishes the movant's right to an instructed verdict with such certainty that reasonable minds could not differ as to his entitlement to it. *Cor-*

*bin v. Safeway Stores, Inc.,* 648 S.W.2d 292, 295 (Tex.1983).

When reviewed under the foregoing standard, we believe the evidence of plaintiff's common law marriage to the decedent was sufficient to have required the trial judge to submit this issue to the jury.

■ The three essential elements of a common law marriage are: (1) an agreement to be married, (2) cohabitation as husband and wife after the agreement, and (3) holding forth to the public by the couple that they are married. TEX.FAM.CODE ANN. § 1.91(a)(2)(Vernon 1975); *Persons v. Persons,* 666 S.W.2d 560, 562 (Tex.App.—Houston [1st Dist.] 1984, writ ref'd n.r.e.). Appellee contends that appellant failed to present any evidence at trial establishing that he and the decedent agreed to be husband and wife or that they held themselves forth to the public as married.

An agreement by parties to be married may be inferred if it is proven that the parties cohabited together as husband and wife and represented themselves as married to others. TEX.FAM.CODE ANN. § 1.91(b) (Vernon 1975). Because appellee concedes that appellant and the decedent cohabited together as husband and wife, appellant was required only to introduce at trial probative evidence of a holding forth to the public in order to require that this issue go to the jury. *Persons v. Persons,* 666 S.W.2d at 562. Our review of the record in a light most favorable to appellant convinces us that there was probative evidence of a holding forth as husband and wife.

Appellant and decedent began cohabiting together in 1970 and continued to do so continuously until decedent's death in 1979. At the request of appellant, decedent ceased working shortly after she and appellant began living together. Thereafter, he was the sole provider of her support. Appellant testified that when he and the decedent were in public they would refer to themselves as being married. The decedent was called "Aunt Juanita" by appellant's sister's children and sometime before her death she took out an insurance policy in which she designated appellee as her beneficiary and stated that he was her "husband."

The medical records introduced into evidence at the trial refer to appellant as the husband of the decedent. An employee of the Santa Rosa Medical Center testified that when appellant arrived in the emergency room on February 19, 1979, he represented himself as the common law husband of the decedent. Finally, appellee testified that he asked appellant whether he wished his "wife" to be treated at the Santa Rosa Medical Center and explained to him "what his obligations would be for her care."

This evidence, and the reasonable inferences that may be drawn therefrom, when considered in a light most favorable to appellant was sufficient to create a question of fact for the jury on whether appellant and the decedent had a common law marriage. Appellant's first point of error is sustained.

Appellant's third point of error questions whether the trial court erred in granting the motion for instructed verdict on the ground that there was no competent medical evidence to establish that the death of the decedent was proximately caused by the negligence of the appellee.

■ To sustain his or her burden of proof in a negligence action, the plaintiff must establish by probative and competent evidence that the injuries sustained were the natural result of a continuous and unbroken chain of events produced by the negligent act or omission of the defendant. This is the meaning of proximate cause. *Chancey v. Van Luit,* 306 S.W.2d 377, 380 (Tex.Civ.App.—Amarillo 1957, writ ref'd n.r.e.). It is not necessary that the negligent act or omission be the sole proximate cause of an injury; it need only be a proximate cause, or one without which the injury would not have occurred. *Clark v. Waggoner,* 452 S.W.2d 437, 440 (Tex.1970).

■ The essential elements of proximate cause are cause in fact and foreseeability. *Hernandez v. Southern Pacific*

*Transport Co.*, 641 S.W.2d 947, 951 (Tex. App.—Corpus Christi 1982, no writ); *Edwards v. Shell Oil Co.*, 611 S.W.2d 904 (Tex.Civ.App.—Eastland 1981, writ ref'd n.r.e.). A cause in fact is one that is a substantial factor in bringing about an injury. Foreseeability means that a person of ordinary intelligence should have foreseen that the same or a similar injury would have occurred as the result of the negligent act or omission. *Westinghouse Supply Co., A Division of Westinghouse Electrical Corp. v. Page & Wirtz Construction Co.*, 647 S.W.2d 44, 48 (Tex.App. —Amarillo 1982, writ ref'd n.r.e.). In medical negligence actions, proximate cause must be established by expert testimony. *Stanton v. Westbrook*, 598 S.W.2d 331 (Tex.Civ.App.—Houston [14th Dist.] 1980, no writ); *Williford v. Banowsky*, 563 S.W.2d 702 (Tex.Civ.App.—Eastland 1978, writ ref'd n.r.e.).

■ Appellant offered at trial Peter Rosen, M.D., an emergency room physician, as his medical expert. Although Dr. Rosen's opinion as to the cause of the decedent's heart attack differed dramatically from the testimony of defendant and his expert, Dr. Rosen's testimony, if believed by the jury, would have supported a verdict in favor of appellant.

On the question of proximate cause, Dr. Rosen testified that the heart attack which resulted in the decedent's death was caused by septic shock. According to Dr. Rosen, septic shock is a treatable condition from which the patient can recover if proper and timely medical care is rendered. Further, Dr. Rosen stated that the delay in the decedent's care, that resulted from the failure of appellee to treat her in the emergency room of the Santa Rosa Medical Center, enabled the cardiac arrest to occur. In his opinion the cardiac arrest could have been prevented by the intervention of medical care that would have reversed her deteriorating physical condition. When asked whether the decedent's physical condition could have been stabilized in the Santa Rosa Medical Center emergency room, Dr. Rosen responded:

I don't know that stability could have been achieved in the emergency department, but it could have been commenced. I think that it took awhile for this patient to get as sick as she was, and I think it would have taken awhile to get her well again. But I think that the road to stability was critically to be begun in the emergency department and that definitely could have been accomplished and was not.

From the testimony of Dr. Rosen, the jury could reasonably find that the cardiac arrest which lead to the death of the decedent would have been prevented by timely and appropriate care. Dr. Rosen's testimony, when read in a light most favorable to appellant, establishes that the conduct of the appellee was a cause in fact of the decedent's death. Appellant has sustained his burden of proof on this element of proximate causation.

Dr. Rosen's testimony also establishes the second element of proximate causation, foreseeability. Dr. Rosen testified that the rapid deterioration of the decedent's condition upon her arrival at the Santa Rosa Medical Center should have been foreseen. Her condition was unstable, she was badly dehydrated, she had a rapid respiratory and heart rate. According to Dr. Rosen, "all of those things suggest that without intervention she is going to have some sort of untoward undesirable event, such as cardiac arrest; such as a respiratory arrest." This testimony was probative evidence of foreseeability.

Our review of the entire record, examined in a light most favorable to appellant, convinces us that he has sustained his burden of proof on the issue of proximate causation. Therefore, we sustain appellant's third point of error.

Appellant next complains that the trial court erred in granting appellee's motion for instructed verdict on the grounds that no evidence of damages had been presented at trial.

■ Assuming that the jury found appellant to be the surviving spouse of the

decedent, he would have been entitled to recover for loss of consortium, including loss of society and companionship, and mental anguish. These non-pecuniary damages may be recovered in a wrongful death action by the surviving spouse of a decedent. *Missouri Pacific Railroad Co. v. Vlach*, 687 S.W.2d 414, 417 (Tex.App.—Houston [14th Dist.] 1985, no writ); *Estate of Clifton v. Southern Pacific Transportation Co.*, 686 S.W.2d 309 (Tex.App.—San Antonio 1985, writ granted); *Air Florida, Inc. v. Zondler*, 683 S.W.2d 769, 772 (Tex.App.—Dallas 1984, no writ); *Missouri Pacific Railroad Co. v. Dawson*, 662 S.W.2d 740, 742 (Tex.App.—Corpus Christi 1983, writ ref'd n.r.e.).

Although difficult to measure in pecuniary terms, loss of affection, solace, comfort, companionship, society, assistance and sexual relations are not so intangible as to be non-compensible. *Whittlesey v. Miller*, 572 S.W.2d 665 (Tex.1978). As was noted by the Court in *Tom Brown Drilling Co. v. Nieman*, 418 S.W.2d 337, 341–42 (Tex.Civ.App.—Eastland 1967, writ ref'd n.r.e.):

> It is difficult to determine the amount in dollars and cents which will compensate a man for the death of his wife. In the instant case much of the service rendered by Mrs. Nieman was of a nature that the loss thereof can be estimated in dollars and cents, but her loss to the home is not limited to any such fixed standard.... The determination of the question is ordinarily for the jury. In this connection it is stated as follows in 33 Tex.Jur., page 144:
>
> > Nor need the value of the wife's services be shown by specific proof with any mathematical accuracy, or in dollars and cents. 'Services', when applied to the function of a wife, are not measured by any fixed or conventional standard of value; their value may be ascertained by a jury from their common knowledge based upon the 'aid, assistance, comfort, and society the wife would be expected to render to or bestow upon her husband' in the circumstances in which they may be placed.

▪ In a light most favorable to appellant, the evidence that he presented at trial would support the submission of the issue of damages to the jury. Appellant testified that he and the decedent had a happy and good relationship. They went shopping together, watched TV together, and sat in the yard together. Decedent did all of the housework for both of them, including the cooking, washing, and yardwork. Appellant and the decedent went to church together and their relationship was "just like any married couple." Since the death of the decedent, appellant has lived alone. Under the foregoing cases, this testimony was probative evidence of damages and its introduction at trial required submission of this issue to the jury.

Appellee contends in his brief on appeal that appellant's proof of damages at trial was deficient because there was no proof that the decedent would have survived her illness except for some act or omission of the appellee. We disagree. As noted above in our discussion of proximate causation, appellant's medical expert, Dr. Peter Rosen, testified that the decedent's septic shock was a treatable condition, that she could have been stabilized, and that she could have been put on the course of recovery that "would have taken awhile to get her well again." From this testimony, the jury reasonably could have inferred that the decedent would have survived had she been given by appellee what Dr. Rosen considered to be appropriate medical care. Dr. Rosen's testimony and the reasonable inferences that may be drawn therefrom would support a finding that the decedent would have survived her critical illness but for some act or omission of appellee. Together with appellant's testimony that the decedent had never suffered from any prior medical illness, had never been hospitalized, and that she was able to do normal household chores and yardwork, we cannot say that appellant failed to present some probative evidence from which the jury could have found that she would have sur-

vived her critical illness but for some act or omission of appellee.

In his last point of error appellant argues that the trial court erred in instructing a verdict on the grounds that there was no evidence to support his allegation of gross negligence.

■ Gross negligence is conduct that is so shocking to common sensibility that it would support a belief that the act or omission complained of was the result of conscious indifference to the right or welfare of the person affected by it. *Burk Royalty Co. v. Walls*, 616 S.W.2d 911, 920 (Tex. 1981).

■ Appellant's theory of gross negligence was that the decedent was refused emergency room medical care by appellee because appellant was not able to pay for it. According to appellant, he was advised by appellee as to what the expenses would be if the decedent were treated at the Santa Rosa Medical Center. Appellee then told him that he would have to make a down payment on this money if he wished decedent treated at that hospital. Despite appellant's request that the decedent be treated at Santa Rosa Medical Center, she was transferred to the Bexar County Hospital, without his consent and without his knowledge, because of his lack of funds.

Appellant's medical expert testified that the transfer of a critically ill patient because of the patient's lack of funds is "unconscionable." If the jury believed the evidence supporting appellant's theory of gross negligence, that evidence would support the conclusion that the refusal to treat the decedent was made with conscious indifference towards her health and welfare. Appellant's fifth point of error is sustained.

The judgment of the trial court is reversed and this cause remanded for a new trial.