**Cuc Thi PHAM and Nguyen Van Tinh, Appellants,**

v.

**Vinh Van NGUYEN, Appellee.**

**No. A14–88–181–CV.**

Court of Appeals of Texas,
Houston (14th Dist.).

Dec. 15, 1988.

Rehearing Denied Jan. 12, 1989.

John J. Brown, Houston, for appellants.

Iris H. Robinson, J. Preston Wrotenbery, Houston, for appellee.

Before J. CURTISS BROWN, C.J., and MURPHY and ROBERTSON, JJ.

## OPINION

ROBERTSON, Justice.

Appellants sued appellee for legal malpractice alleging negligence, breach of contract and violation of the deceptive trade practices act. Trial was to a jury which found for appellants on the only issues submitted, negligence and deceptive trade practice. The court granted appellee's motion for a judgment non obstante veredicto on the grounds that the statute of limitations had run on appellants' suit. Appellants perfected this appeal, asserting four points of error. They contend that the trial court erred in granting the judgment non obstante veredicto because a four year statute of limitations applies, or because the cause of action did not accrue until the termination of the attorney/client relationship or before the appellants were actually damaged. We reverse.

It will be necessary to discuss the facts of this case before reaching the points of error. Mr. and Mrs. Tinh, appellants, were fairly new to this country when they moved to Houston. They were previously acquainted with Mr. and Mrs. Giang when they lived in Vietnam, and renewed their acquaintance on arrival in Houston. Apparently the Tinhs and the Giangs had some discussions regarding the Giangs' business interest in J & G Investments, which operated an adult movie theater. The Giangs were anxious to become partners with the Tinhs in that business because of disputes with their current business partner, David Jones. The Giangs introduced appellants to a Houston attorney, the appellee, Vinh Van Nguyen (hereinafter Vinh or appellee).

Appellants consulted with Vinh on several occasions, paying him for his advice. They contend that he agreed to represent them in the purchase of Jones' shares in the Carousel theater, so that they could become business partners with the Giangs. On June 30, 1982, Mrs. Tinh brought $30,-000 to Vinh's office, for which Vinh wrote her a receipt, signed by the Giangs. She contends the money was given to Vinh so that he could purchase a half interest in J & G Investments, on behalf of the Tinhs. Vinh stated that he went to a closing that evening with the Giangs in order to translate documents for them. He admitted, however, that he was aware that the Giangs were to buy out Jones' share of the business at that closing, but stated that he was not representing the Tinhs at that

time. This money was never returned to the Tinhs.

It is undisputed that the Tinhs and the Giangs visited Vinh at his office on July 6, 1982 in order to have him draft a business agreement concerning the Giangs and the Tinhs. Vinh also testified that he was representing both parties at that time, without disclosing to the Tinhs that he had previously represented the Giangs, concerning their partnership with Jones. On July 10, 1982, Mrs. Tinh obtained a copy of the agreement and found that essentially it gave her and her husband the right to employment at the theater but no interest in the business. In fact, the Giangs, under the agreement, were authorized to fire the Tinhs at any time. Mrs. Tinh objected to the agreement in discussions with Mrs. Giang, and contacted another attorney July 12, 1982, when she could not reach Vinh. She stated that she was unable to contact Vinh from July 10th until September 16, 1982.

On September 16, 1982, appellants were forcibly removed from the theater by the Giangs and told they had no interest in the business. The Giangs pressed criminal charges against the Tinhs based on the incident. Mrs. Tinh contacted Vinh when the criminal charges were brought against her, and he refused to represent her further or to refer her to another attorney. The Tinhs obtained a new attorney who contacted Vinh to terminate the attorney/client relationship between appellants and appellee. On October 11, 1982, Vinh returned $800 to the Tinhs through their new attorney. The Tinhs filed this suit August 24, 1984.

In appellant's second and fourth points of error they contend that the trial court erred in granting a judgment non obstante veredicto because a four year statute of limitations applies to contract actions and to this case as a matter of law. We disagree. It is well established that a two year statute of limitations applies to legal malpractice actions regardless of how the suit is framed. *Woodburn v. Turley*, 625 F.2d 589, 592 (5th Cir.1980); *Willis v. Maverick*, 760 S.W.2d 642, (Tex.1988); *Ga-*

*bel v. Sandoval*, 648 S.W.2d 398 (Tex.App. —San Antonio 1983, writ dism'd); *Citizens State Bank of Dickinson v. Shapiro*, 575 S.W.2d 375, 387 (Tex.Civ.App.—Tyler 1978, writ ref'd n.r.e.). Appellant's second and fourth points of error are overruled.

Appellants argue alternatively in their first and third points of error that the cause of action did not accrue until the attorney/client relationship terminated or until appellants' damages were ascertained. Recently, in *Willis* the supreme court held that the statute of limitations in a legal malpractice case does not begin until the claimant discovers or should have discovered through the exercise of reasonable care and diligence the facts establishing the elements of the cause of action. *Willis* 760 S.W.2d at 643. The court further held that the claimant bears the burden of pleading, proving and receiving findings suspending the statute of limitations. At trial, just prior to submission of the case to the jury, the parties stipulated:

In relation to the J & G Investment, Inc., all actions taken by Defendant on behalf of Plaintiffs occurred prior to July 15, 1982.

However, when the trial court inquired as to the correctness of such stipulation, appellants' counsel stated:

Yes, but I'd like the record to be clear that by making this stipulation we are not stipulating that the Plaintiff was aware of the legal injury or that the attorney/client relationship had ended or that the duty to disclose had ended on July 15th.

Appellee argues that the stipulation establishes the date of the running of the statute. We do not agree.

Appellants contended and the jury found that an attorney/client relationship existed between them and appellee concerning the acquisition of 500 shares of the stock in J & G Investment, Inc. On the other hand, appellee denied that an attorney/client relationship *ever existed* between him and appellants for acquiring the shares. Thus, the negligence of appellee which the jury found to have proximately caused appellants' damages was the failure

to acquire the 500 shares of stock. It seems clear to us, therefore, that under no circumstances could the statute begin to run until appellants knew they would not receive the stock which would be either of two dates: (1) September 16, 1982 when appellant contacted appellee for assistance after they (appellants) were told to leave the theater and appellee refused to represent them further or to refer them to another attorney, or (2) October 11, 1982, when appellee refunded to them the $800 legal fees appellants had previously paid him. Both of these dates were within two years of August 24, 1984, when suit was filed. Appellee would argue that appellants knew they would not receive the stock during July, when the Giangs informed them they would not sell. We find no merit in this contention, however, because the Giangs had previously contradicted themselves on the matter by making an offer, refusing to sell, then renewing their offer to sell to the Tinhs. Further, appellants could not, through reasonable diligence, have located Vinh before either of these dates and thus had the right to rely on appellee until notified that he was no longer working on their behalf.

As we view the stipulation that, "all actions taken by Defendant on behalf of Plaintiff occurred prior to July 15, 1982" it did not establish the date for the beginning of the statute of limitations. Neither did any oral representation by the Giangs. We conclude, therefore, that it was error for the trial court to grant judgment notwithstanding the verdict on the basis of that stipulation.

The judgment is reversed and hereby rendered in accordance with the jury verdict.