JIM ARNOLD CORPORATION,
Appellant,

v.

George M. BISHOP, George M. Bishop, P.C., Harrison Vickers, Matthews and Associates, and Guy E. Matthews, Appellees.

No. 09–93–113CV.

Court of Appeals of Texas,
Beaumont.

Submitted Feb. 1, 1996.

Decided Aug. 29, 1996.

R.F. "Bo" Horka, Kountze, Rebecca S. Matthews, Gammon & Matthews, Houston, for appellant.

George M. Bishop, Houston, John B. Wallace, James H. Barker, Giessel, Stone, Barker & Lyman, Houston, Louis Dugas, Jr., Orange, for appellees.

Before WALKER, C.J., and BURGESS and STOVER, JJ.

## OPINION

WALKER, Chief Justice.

Jim Arnold Corporation (JACOR), appellant herein, brought suit against appellees, George M. Bishop, George M. Bishop, P.C. (collectively "Bishop"), Harrison Vickers ("Vickers"), Matthews and Associates, and Guy E. Matthews (collectively "Matthews"), on various claims, including, but not limited to, fraud, breach of fiduciary duty, legal malpractice, Deceptive Trade Practices Act (DTPA) violations, and tortious interference with business relationships. A declaratory judgment cause of action was brought against Vickers alone.

This case was tried in the 260th Judicial District Court of Orange County, Texas, before a jury. At the conclusion of the evidence, Judge Hahn granted a directed verdict as to all causes of action by JACOR against appellees except JACOR's tortious interference claims against Vickers and Matthews. In the charge to the jury, the trial court submitted questions on whether Vickers and Matthews interfered with a specific JACOR contract and on whether Vickers owned an interest in JACOR. The jury found there was no tortious interference with contract and further found that Vickers did not own an interest in JACOR. The final judgment likewise declares that Vickers did not at any time own any stock or equity interest in JACOR.

Judge Hahn entered a take-nothing judgment against JACOR on its claims against Vickers, Matthews, and Bishop; the trial court also entered a take-nothing judgment on Bishop's and Vickers' counterclaims against JACOR and on Matthews' counterclaim against JACOR, "save and except those claims made the basis of the Motion for Non–Suit." JACOR appeals from the judgment, as does appellee Bishop by cross-point of error.

Appellant brings nineteen points of error, the first fifteen of which contest the trial court's granting of a directed verdict favorable to appellees. At the outset, we overrule points of error four, five, six, ten, and eleven. In points of error four, five, and six, which allege DTPA violations by each of the three appellees, JACOR has not provided us with any argument or authority on appeal regarding the DTPA allegations and, thus, those points are waived. Points four, five, and six are overruled. *See Koch Oil Co. v. Wilber,* 895 S.W.2d 854, 867 (Tex.App.—Beaumont 1995, writ denied). JACOR contends in points of error ten and eleven that, as to appellees Vickers and Matthews, the trial court erred in directing a verdict regarding JACOR's cause of action for tortious interference with business relationships. However, the trial court did not direct a verdict on the tortious interference cause of action in favor of Vickers and Matthews. The directed verdict specifically recites that the "Motion for Directed Verdict [as to Vickers and Matthews] is granted as to all causes of action alleged by plaintiff *except* for the cause of action for tortious interference with business relationships and as to this cause of action, the Motion for Directed Verdict is DENIED." (emphasis added) Points ten and eleven are overruled.

Factually, appellant, a Texas corporation, was originated in 1975 by James F. Arnold. Appellant corporation (JACOR) was formed for purposes of marketing a "woodpecker drill collar" and other oil field equipment. The "woodpecker drill collar" is a down-hole piece of oil field equipment used to facilitate directional drilling; it allows the drilling of a straight hole in irregular formations. In 1981, JACOR hired appellee Harrison Vickers to manage the business. Appellee Vickers was also an attorney. As president of JACOR, Vickers managed the company from 1981 until his resignation, effective May 16, 1986. Jim Arnold then ran JACOR from May 1986 until October 1988 when he sold his interest in JACOR to Earl Ennis. On March 28, 1991, the present litigation was filed wherein JACOR sued Vickers, Matthews, and Bishop. Matthews was the attorney hired to represent JACOR in a lawsuit referred to as the *Al Monsoori* suit, an effort to recover damages for the alleged wrongful use of JACOR's oil field equipment.

The evidentiary record reveals that between 1981 and 1986, JACOR's financial situation required the borrowing of funds. During this time period, JACOR borrowed money from three banks, the last and largest loan being made in mid–1984 from Century National Bank, Austin, Texas, for $125,000. As part of the loan collateral, JACOR pledged some of its stock, which included 6,000 shares from Arnold and 4,000 shares from Vickers. Arnold denied that he ever authorized JACOR to issue any stock to Vickers or that Vickers ever held a legitimate ownership interest in JACOR.

Between 1981 and 1986, JACOR entered into various contracts which included those with Sofec and Voest–Alpine. These contracts were the source of some of the mismanagement and breach of fiduciary duty allegations made by James Arnold against Vickers. Under its design contract with Voest–Alpine, JACOR received approximately $400,000 in 1985. By brief, JACOR contends that it lost $220,000 on that contract; however, further testimony reveals that Arnold may not have collected an additional $220,000 owed JACOR by Voest–Alpine. In regards to the contract with Sofec, Arnold wanted Sofec to help JACOR develop a down-hole blowout preventer. JACOR, through Vickers, cancelled the contract in May 1984, when Sofec chose not to pay JACOR $75,000 to maintain Sofec's exclusive right to the device. According to the testimony, no one had ever developed or marketed a down-hole blowout preventer.

In 1985, JACOR hired appellee Matthews to pursue a lawsuit against the Al Monsoori

Company. This suit was an effort to recover payment for the use of JACOR's woodpecker drill collars in the Middle East. Matthews filed suit against Al Monsoori in August 1985.

Arnold, having become progressively dissatisfied with Vickers, hired an outside accountant to review JACOR's books. The accountant reported that Vickers had mismanaged JACOR and, as a result of this report, Arnold took Vickers off the check registry and suggested that Vickers leave. Vickers resigned, effective May 16, 1986.

Following Vickers' departure, Arnold ran JACOR for the next two and a half years. In January and February 1987, Arnold engaged in conversation with the Saied brothers regarding the sale of JACOR stock to them. Arnold was aware that Vickers had allegedly created a cloud on title by pledging 4,000 shares of JACOR stock, which had been issued in Vickers' name, to secure a loan. Arnold's personal attorney, Paul Coselli, represented Arnold during his negotiations with Vickers and the Saied brothers. Despite alleged mismanagement and unauthorized stock issuance, Arnold chose not to have JACOR pursue action against Vickers until March 28, 1991.

In May 1987, Matthews tried the *Monsoori* case, recovering a $3,200,000 judgment. Several months later the trial court granted a new trial. Because of Arnold's dissatisfaction with Matthews concerning the manner in which Matthews had communicated with him about the *Monsoori* suit, Arnold retained Bishop in 1987 to advise him about the *Monsoori* case and its progress. According to the evidence, neither the Saied brothers nor Arnold could pay Matthews on an hourly basis; thus, Matthews and Victor Saied suggested that the parties agree to a larger contingency fee arrangement and drop any hourly fee requirement. Though Arnold denied having read this agreement before signing same in June 1988, he nonetheless signed the new agreement providing for a larger contingency fee for Matthews. The contingency fee agreement did not provide for payment of Bishop. However, Bishop and Matthews had an agreement that Bishop would be paid out of Matthew's share.

In October 1988, Arnold sold JACOR to Ennis. Prior to purchasing JACOR, Ennis met with the Saied brothers, who relinquished their interest in JACOR in exchange for an undisclosed payment once the *Monsoori* case closed. Upon purchasing JACOR, Ennis received the *Al Monsoori* lawsuit and a few woodpecker drill collars. JACOR had no office, no plant, no bank account, no telephone listing, and no employees. According to the testimony, Ennis at first hid from Vickers, Matthews, and Bishop the fact that he had purchased JACOR. Ennis also secretly tape-recorded his conversations with the three appellees. In December 1988, Matthews resigned as attorney for JACOR in the *Monsoori* lawsuit. His Motion to Withdraw was granted in federal court on March 30, 1989.

Following Ennis' purchase of JACOR and his learning of Vickers' ownership claims, Ennis set up a separate company named Inertia to market the drill collars. Ennis admitted at trial that he knew of Vickers' ownership claims more than two years before filing suit. Inertia entered into an agreement with Guanoco Oil Company, a Venezuelan firm, to lease drill collars through Guanoco to large oil companies working in Venezuela. Guanoco owner, Federico Gascue, testified that Guanoco did not have a signed contract with any drilling company to use drill collars. Gascue further testified that Guanoco had no obligation to pay Inertia except for collars Guanoco actually rented to customers or used itself. Guanoco and Inertia never did business under the agreement, because Inertia never supplied the drill collars.

In July 1991, the second *Monsoori* trial was had, and JACOR received judgment in the sum of $4,200,000. Al Monsoori appealed the judgment, and that appeal was not concluded at the time the instant case was tried.

Appellant brings nineteen points of error, certain of which address error as relating to individual appellees and some applicable generally. Having disposed of points four, five, six, ten, and eleven, we now turn to the remaining points. Points of error one through three, seven through nine, and twelve contend that sufficient evidence was

presented to raise fact issues regarding breach of fiduciary duties and fraud by all three appellees, and tortious interference with business relationships by Bishop.

JACOR, at trial, claimed damages from various actions by Vickers which occurred while Vickers was JACOR's president, including lost income on the Voest–Alpine and Sofec contracts, improper side agreements, improper bonus payments, fraudulent creation of stock, and other claimed mismanagement. It is clear that JACOR had notice of its present claims against Vickers as early as May 1986, when Vickers left JACOR. JACOR took no action against Vickers regarding these claims. JACOR now contends that as late as 1988 Vickers continued to interfere in JACOR's business relationships and the ongoing *Monsoori* suit. Still, JACOR took no action against Vickers. Furthermore, JACOR, though now alleging several causes of action against Matthews and Bishop relating to their alleged involvement with Vickers, also took no action against Matthews and Bishop until the filing of the instant suit on March 28, 1991.

JACOR's claims for tortious interference and legal malpractice have a two year limitation. *See First Nat'l Bank of Eagle Pass v. Levine,* 721 S.W.2d 287, 289 (Tex.1986) (tortious interference); *Willis v. Maverick,* 760 S.W.2d 642, 644 (Tex.1988) (legal malpractice). JACOR filed suit on March 28, 1991; thus, all two year claims accruing before March 28, 1989 are barred by limitations. Similarly, any four year claims relating to fraud that accrued before March 28, 1987, are barred by limitations.

Limitations statutes begin running when an injury occurs or, if the discovery rule applies, when the party discovers, or reasonably should have discovered, his injury. *Moreno v. Sterling Drug, Inc.,* 787 S.W.2d 348, 351 (Tex.1990). Arnold learned about Vickers' alleged corporate mismanagement and breach of fiduciary duty in early 1986 from an independent accountant who reviewed JACOR's records. Based upon this independent review, Vickers parted ways with Arnold and JACOR. Arnold chose not to have JACOR pursue any claims against Vickers until March 28, 1991. We hold that

the evidence conclusively established that JACOR's business mismanagement claims, including breach of fiduciary duty and fraud, against Vickers have been effectively barred by the two year statute of limitations.

Likewise, claims arising from the cloud on title are also barred, whether they were pled as two year or four year claims. By February 1987, Arnold had learned about the 4,000 shares of stock issued in Vickers' name and pledged as security on a loan to Century National Bank. Arnold learned about the cloud on title while negotiating with the Saied brothers, who wanted to buy part of JACOR. Furthermore, Arnold was represented by a personal attorney when learning of the cloud on title. According to the evidence, Arnold's daughter had typed up the alleged bogus stock certificate for 4,000 shares in 1984, three years before Arnold allegedly learned about the certificates. Assuming, arguendo, that Vickers' conduct in issuing the stock certificate and pledging same to Century National Bank, was wrongful, such would amount to fraud. Not only did Arnold know about the bogus stock certificates in January or February 1987, he also knew from Vickers' resignation letter in April 1986 that Vickers was claiming an ownership interest in the company. When an act invades a legally protected right or interest, the claim accrues when the act occurs. *See Atkins v. Crosland,* 417 S.W.2d 150, 153 (Tex.1967). Arnold learned about the cloud on title at least in February 1987. Limitations began running from that time at the latest. Consequently, the action for cloud on the title was barred by statute of limitation.

JACOR contends that the clouding of the title of the stock constitutes a continuing tort. Traditionally, continuing tort theories apply to such causes of action as nuisance, trespass, and false imprisonment. *See Adler v. Beverly Hills Hospital,* 594 S.W.2d 153, 155–156 (Tex.Civ.App.—Dallas 1980, no writ). In continuing tort cases, the tortious conduct is repeated day by day. By contrast, the cloud on title was created on a specific day with no new cloud created day after day. When JACOR filed suit against appellees, the cloud on the title had been

there for years. Limitations ran against any claim arising from the cloud on title, because limitations accrued when Arnold learned as early as April 1986 or as late as February 1987 about the cloud, even though the tort allegedly caused additional damages at a later time. *See Murray v. San Jacinto Agency, Inc.,* 800 S.W.2d 826, 828 (Tex.1990) (bad faith claim accrued when coverage was denied; fact that damages continued to accrue for an extended period after the denial did not toll limitations).

Limitations barred all of JACOR's claims against Vickers, save and except those claims for legal malpractice relating to the *Monsoori* suit. The other claims were based upon alleged misconduct of Vickers while serving as CEO of JACOR, and that tenure ended in May 1986. Consequently, JACOR's point of error one, alleging Vickers' breach of fiduciary duty, and point of error seven, alleging Vickers' fraud, are overruled.

The record as a whole, appellant's brief, and appellant's pleadings make it difficult, if not impossible, to delineate between appellant's claim for legal malpractice against Vickers, Matthews, and Bishop, and other independent grounds asserted. Appellant's lengthy pleadings regarding breach of fiduciary duties, DTPA violations, fraud, and tortious interference with business relationships, are so interwoven as to defy meaningful distinction. Each allegation appears as a shade of other allegations.

■ Though appellant's pleadings below are vast and cumbersome, we can but conclude that appellant's claim for legal malpractice is directed to the *Monsoori* suit. Points of error thirteen, fourteen, and fifteen contend there was sufficient evidence to raise issues regarding the legal malpractice of Vickers, Matthews, and Bishop. In this regard, the evidentiary record is silent as to how, when, and where Vickers was retained as an attorney by JACOR regarding the *Monsoori* litigation. We believe it requisite in legal malpractice claims asserting negligence that claimant show the attorney had a duty to the claimant as an attorney; the attorney breached that duty; the breach of such duty proximately caused claimant's injury; and damages resulted from such breach.

*See Peeler v. Hughes & Luce,* 909 S.W.2d 494, 496 (Tex.1995); *Cosgrove v. Grimes,* 774 S.W.2d 662, 664 (Tex.1989). Finding no evidence for appellant's claim of legal malpractice against Vickers, we affirm the trial court's granting of directed verdict on such claim. Point of error thirteen is overruled.

Appellee Matthews was first hired to pursue the *Monsoori* lawsuit in 1985. This suit resulted in a jury verdict of $3,200,000 in May 1987. As previously stated, the trial court granted a new trial, and the second trial resulted in a $4,200,000 verdict in favor of JACOR.

■ The primary focus of appellant's legal malpractice claim against Matthews involves the handling of the *Monsoori* suit, focusing on four areas: the new trial granted after the first trial; the dropping of the conversion claim at the first trial; Matthews' alleged suggestion that JACOR pay Vickers for his testimony; and attorney's fees. As to JACOR's contention that Matthews committed legal malpractice by failing to seek permission to file an appeal in connection with the trial court's granting of new trial in the first *Monsoori* case, the record is void as to evidence supporting such claim. It is clear from the record that JACOR's position was enhanced by the verdict in the second trial in the sum of $1,000,000.

■ JACOR also claims that Matthews wrongfully waived the conversion claim in the first *Monsoori* case and did so without consulting his client, JACOR. This conversion claim was re-asserted in the second trial. JACOR again has failed to show any evidence that dropping the conversion claim in the first trial caused JACOR to suffer any actual damages.

■ In further support of its legal malpractice claim against Matthews, JACOR alleges that Matthews suggested the payment of Vickers for his testimony in the second *Monsoori* case. There is no evidence in the record to show that Vickers was ever paid to testify in the *Monsoori* case; nor did Vickers appear as a live witness in the second *Monsoori* trial. JACOR used Vickers' tran-

scribed testimony from the first *Monsoori* trial.

■ JACOR further contended that Matthews wrongfully insisted on changing the attorney's fee agreement in the *Monsoori* matter. JACOR offered no evidence of damage resulting from this change in the attorney's fee agreement. On appeal, appellant ignores the evidence that JACOR could not pay the previously agreed upon hourly rate despite numerous requests. The subsequent agreement between Matthews and JACOR was based on a contingency fee recovery. JACOR received a judgment for $4,200,000 in the second trial; that judgment was appealed, and no money had been collected at the time the present case was tried. JACOR claimed that it incurred $175,000 in legal fees as a result of misconduct in the *Monsoori* case. We find this to be pure speculation in that same is not supported in the record.

The causes of action against Matthews, though couched in such terms as breach of fiduciary duty in point of error one, negligence, breach of contract, and breach of warranty in point of error fourteen, and fraud in point of error eight, are all subsumed under a legal malpractice action and subject to a two year statute of limitations. *See Burnap v. Linnartz,* 914 S.W.2d 142, 148 (Tex.App.—San Antonio 1995, writ denied); *Judwin Properties, Inc. v. Griggs and Harrison,* 911 S.W.2d 498 (Tex.App.—Houston [1st Dist.] 1995, no writ); *Estate of Degley v. Vega,* 797 S.W.2d 299, 302–303 (Tex.App.—Corpus Christi 1990, no writ); *Pham v. Nguyen,* 763 S.W.2d 467, 469 (Tex.App.—Houston [14th Dist.] 1988, writ denied).

In its allegations against Guy Matthews, JACOR, in essence, alleges that Matthews, in conspiracy with Bishop and Vickers, attempted to acquire the assets of JACOR, including the *Monsoori* suit. In so doing, appellant contends that Matthews breached the fiduciary duty which he owed to his client JACOR, committed fraud and legal malpractice, violated the DTPA, and tortiously interfered with business relationships.

■ As a rule, a cause of action accrues, and the statute of limitations begins to run, when a wrongful act causes some legal injury, even if the fact of injury is not discovered until later and even if all resulting damages have not yet occurred. *See Trinity River Auth. v. URS Consultants, Inc.,* 889 S.W.2d 259, 262 (Tex.1994). There are exceptions to the general rule, however. Accrual of a cause of action is deferred in cases of fraud, or in which the wrongdoing is fraudulently concealed, and in discovery rule cases in which the alleged wrongful act and resulting injury were inherently undiscoverable at the time they occurred but may be objectively verified. *See Computer Assoc. Int'l, Inc. v. Altai, Inc.,* 918 S.W.2d 453, 455–456 (Tex. 1996).

■ The accrual of the two year statute of limitations may, therefore, be delayed by the discovery rule, or the statute of limitations may be tolled by fraudulent concealment of wrongdoing. *Willis v. Maverick,* 760 S.W.2d 642, 645, 647 (Tex.1988). Since JACOR did not plead the discovery rule, JACOR cannot now claim its benefits. However, JACOR did plead fraudulent concealment and alleged that after Vickers resigned from JACOR, Vickers, without the knowledge and consent of JACOR, worked in a legal capacity with Matthews on the *Monsoori* suit at the same time that Vickers was claiming an ownership interest in JACOR and a right to a percentage of the recovery in *Monsoori.* There is more than a scintilla of evidence in the record that Vickers, though never retained as attorney by JACOR on the *Monsoori* case, was working with Matthews on the suit after Vickers resigned from JACOR and was no longer an officer in the corporation. Ennis testified he had no knowledge of such an arrangement until it was revealed during the discovery process in the instant suit. Arnold testified no one told him that Vickers was working on the *Monsoori* suit after Vickers left JACOR in May 1986.

Matthews' allowance of such an arrangement, no matter how limited the participation of Vickers, is some evidence of breach of fiduciary duty, since Vickers' claims of an ownership interest in JACOR and an entitlement to a percentage of the recovery in *Monsoori* were antagonistic to JACOR. Though there is evidence of breach of fidu-

ciary duty and conflict of interest, appellant presents no evidence of how such an arrangement damaged JACOR. The jury returned a verdict of $3,200,000 in the first *Monsoori* trial, and, although the trial court granted a new trial, there is no evidence that the granting of the new trial had anything to do with Vickers' involvement in the litigation and any breach of fiduciary duty on the part of Matthews. A directed verdict was proper in that regard.

JACOR's other legal malpractice claims against Matthews, including those denominated as breach of fiduciary duty, negligence, fraud, conspiracy, breach of contract, and breach of warranty, are barred by the statute of limitations, and a directed verdict is likewise proper as to them. The alleged conduct occurred and was known to appellant more than two years prior to March 28, 1991, the date of the filing of the instant suit.

A party is entitled to a directed verdict when reasonable minds can draw only one conclusion from the evidence. *See Collora v. Navarro,* 574 S.W.2d 65, 68 (Tex.1978); *Sargent v. Smith,* 863 S.W.2d 242, 248 (Tex. App.—Beaumont 1993, no writ). Upon review, the appellate court is to determine whether there is any evidence of probative force to raise fact issues on material questions presented, and the court must consider all evidence in the light most favorable to the party against whom verdict was instructed, disregarding all contrary evidence and inferences. *Collora,* 574 S.W.2d at 68.

Considering the evidence in the light most favorable to JACOR, we find nothing more than conjecture, innuendo and speculation. Although we are duty bound to consider the evidence in a light most favorable to JACOR, we are also duty bound to uphold a directed verdict when the only evidence is based on suspicion or surmise. The court cannot convert mere suspicion or surmise into some evidence. *See Browning–Ferris, Inc. v. Reyna,* 865 S.W.2d 925, 927–28 (Tex. 1993). Moreover, the cause of action for legal malpractice is barred as a matter of law by limitation and is a proper subject of a directed verdict. *See Rowe v. Rowe,* 887 S.W.2d 191, 196 (Tex.App.—Fort Worth 1994, writ denied). We find no error in the trial court's directing a verdict in favor of Matthews and against JACOR in its claim for legal malpractice, fraud, and breach of fiduciary duty as to Matthews. Points of error two, eight, and fourteen are overruled.

Regarding the alleged legal malpractice claim (which includes the breach of fiduciary duty and fraud claims) against appellee Bishop, the record shows that Bishop was hired by Arnold to "look after some lawsuits that JACOR had going on Al Monsoori." According to Arnold, Bishop's duties were to keep the attorneys honest, keep the trial going, and not miss docket call. The record is unclear as to whether Bishop was ever hired by JACOR to perform any function. Bishop claimed that he represented Arnold, not JACOR. At trial, Arnold claimed that Bishop did not "fulfill his obligations" in regard to overseeing the *Monsoori* suit and prosecuting the suit against Hughes Tool. However, Arnold also stated that he had received help from Bishop and had no complaints about same. Arnold further admitted that he never paid Bishop to file any lawsuit against Hughes Tool, and no such lawsuit existed at the time he met Bishop. Arnold knew of nothing that Bishop said which was false or fraudulent. Moreover, Arnold stated that Bishop had done everything Arnold had asked him to do. Arnold also testified that he did not know if Bishop had turned a "blind eye" to the actions of Vickers and Matthews.

Arnold testified that he did not know if Bishop had done anything toward JACOR or Arnold that would constitute willful conduct, malice, or reckless disregard for the rights of JACOR. Also, Arnold had no supportive knowledge of allegations of deceptive trade practices as to Bishop. No evidence was produced against Bishop regarding tortious interference with contract, allegations of civil conspiracy, or breach of agreement.

No other witness testified to any acts of Bishop that could have raised a fact issue supporting any of JACOR's claims against Bishop. Appellant's brief makes no reference to any exhibit or testimony of any witness that raises a fact issue concerning any of the pleaded causes of action against

Bishop. The evidence falls far short of a sufficiency which would allow reasonable minds to differ. When a trial court directs a verdict against the party bearing the burden of proof, that party must show on appeal that it presented evidence below on each element of its claim. *See Ortiz v. Santa Rosa Medical Center,* 702 S.W.2d 701, 703 (Tex.App.—San Antonio 1985, writ ref'd n.r.e.); *Guynn v. Corpus Christi Bank & Trust,* 589 S.W.2d 764, 770 (Tex.Civ.App.—Corpus Christi 1979, writ dismissed). We affirm the trial court's granting of directed verdict favoring Bishop and overrule points of error three, nine, twelve, and fifteen.

Appellant's point of error sixteen contends that the trial court erred in refusing to allow appellant to elicit testimony from Earl Ennis of the existence, terms, and values of contracts existing between JACOR and third parties. Point of error seventeen challenges the trial court's refusal to allow appellant to conduct telephone depositions during trial.

■ A trial court does not abuse its discretion in excluding irrelevant evidence or hearsay testimony. *Tracy v. Annie's Attic, Inc.,* 840 S.W.2d 527, 532 (Tex.App.—Tyler 1992, writ denied); *Horta v. Tennison,* 671 S.W.2d 720, 722–23 (Tex.App.—Houston [1st Dist.] 1984, no writ). Ennis' testimony regarding the contracts, which were not in evidence, was hearsay and inadmissible; appellees properly objected to that testimony. Here, JACOR has failed to show any harm caused by the trial judge's ruling. In addition, JACOR has not provided this Court with any record citations to the evidentiary rulings of which it complains. Appellant has failed to pinpoint its alleged erroneous evidentiary rulings, thus, providing this Court with nothing to review. *See Upton v. Baylor College of Medicine,* 811 S.W.2d 168, 174 (Tex.App.—Houston [1st Dist.] 1991, writ denied); *Cissne v. Robertson,* 782 S.W.2d 912, 923–24 (Tex.App.—Dallas 1989, writ denied).

■ JACOR also complains of Judge Hahn's refusal to allow appellant to take depositions during trial. Judge Hahn's decision cannot be the basis for reversal unless he abused his discretion, and the errors made were so harmful that they probably caused rendition of an improper judgment.

*Hutchings v. Chevron U.S.A., Inc.,* 862 S.W.2d 752, 761 (Tex.App.—El Paso 1993, writ denied). Every trial court has the "inherent power" to control the disposition of the case on its docket "with economy of time and effort for itself for counsel and its litigants." *Metzger v. Sebek,* 892 S.W.2d 20, 38 (Tex.App.—Houston [1st Dist.] 1994, writ denied). The court's inherent power and the applicable rules of procedure and evidence accord judges broad, but not unfettered, discretion in handling trials. *Id.* The judge is responsible for the general conduct and management of the trial. *Id.* In fulfilling this responsibility, the court has, for example, discretion in expressing itself while managing the trial. *Id.* The court in the instant case likewise has discretion in its decision to refuse to allow appellant to take depositions during trial; in so doing, the trial court properly exercised its control over the general conduct and management of the trial. Furthermore, JACOR has failed to point out to this Court where and how Judge Hahn's rulings probably caused the rendition of an improper judgment. Appellant's points of error sixteen and seventeen are overruled.

Point of error eighteen complains that the trial court erred in holding appellant to a greater standard of proof than is required by law. The entirety of appellant's address to this point of error is as follows:

The trial court erred in holding Plaintiff to a greater standard of proof than is required by law. The trial court, by its rulings, forced Plaintiff to prove each element of its case beyond a reasonable doubt, or have evidence subjectively falling below this standard excluded from trial and then have verdict directed against it. The applicable standard should have been a mere preponderance of the evidence. As a result, Plaintiff was denied its right to present evidence of all its damages and the trial court directed verdict against Plaintiff on most of its claims.

We find no evidence in the record which indicates that the trial court forced appellant to prove each element of its case beyond a reasonable doubt. Appellant has failed to cite supporting authority for this point of

error; therefore, point of error eighteen is waived, and we overrule it. *See Champion v. Wright,* 740 S.W.2d 848, 852 (Tex.App.—San Antonio 1987, writ denied); *Beaty v. Bales,* 677 S.W.2d 750, 758 (Tex.App.—San Antonio 1984, writ ref'd n.r.e.).

Point of error nineteen contends that the trial judge erred in refusing to submit any jury questions on appellant's claims of fraud, conspiracy to commit fraud, breaches of fiduciary duty, negligence, gross negligence, breach of contract and warranty, and/or legal malpractice.

The entirety of appellant's address to point of error nineteen is as follows:

The trial judge erred in refusing to submit any jury questions on Plaintiff's claims of fraud, conspiracy to commit fraud, breaches of fiduciary duty, negligence, gross negligence, breaches of contract and warranty, and/or legal malpractice. Such requested jury questions were supported by the pleadings, were raised by the evidence and should have been submitted to the jury for consideration.

Each of these errors by the trial judge were sufficient, in and of themselves, to alter the outcome of the trial. Permitting the evidence of overseas contracts in the Middle East and in Russia would have overcome what the court called its primary reason for directing verdict: the lack of evidence of damages (although in so stating, the court seemed somehow to overlook the evidence of the Guanoco and Sofec contracts and to ignore the law which provides that even nominal damages will support a jury verdict and the award of punitive damages). Clearly, the outcome of this trial would have been very different if the court had not erred as set forth above. Justice demands a new trial.

Appellant has not included argument and authority showing that it offered evidence raising a fact issue on these alleged liability issues. When a trial court directs a verdict against the party bearing the burden of proof, that party must prove to the appeals court that he has presented some evidence below on each element of its claim. *Ortiz v. Santa Rosa Medical Center,* 702 S.W.2d 701, 703 (Tex.App.—San Antonio 1985, writ ref'd

n.r.e.); *Guynn v. Corpus Christi Bank & Trust,* 589 S.W.2d 764, 770 (Tex.Civ.App.—Corpus Christi 1979, writ dism'd). Appellant did not do so. Point of error nineteen is overruled.

We now address Bishop's cross-point of error. Bishop contends that the trial court erred in not allowing Bishop's testimony on his "counterclaim and cross-claim" against Jim Arnold Corporation and "its alter egos, Earl Ennis and James F. Arnold."

Appellant filed its original lawsuit on March 28, 1991; Bishop filed an Original Answer on December 4, 1991, subsequently amending same within seven days of trial to bring the counterclaim and cross-claim against JACOR, Arnold, and Ennis on October 2, 1992. The trial began October 5, 1992. This counterclaim/cross-claim contends that plaintiffs Jim Arnold Corporation and its alter egos, Earl Ennis and James Arnold, brought action against Bishop pursuant to the Deceptive Trade Practices Act and that such action is groundless and brought in bad faith, solely for purposes of harassment. Bishop contends that he is entitled to recovery of attorney's fees and expenses incurred in defending against plaintiff's claims.

Bishop's amended answer and counterclaim/cross-claim were filed within seven days of trial. A party seeking to amend within seven days of trial must obtain permission of the court. TEX.R. CIV. P. 63. Leave to file shall be granted by the judge unless there is a showing that such filing will operate as a surprise to the opposite party. Bishop sought not only to amend his answer but also to file a counterclaim/cross-claim against Ennis and Arnold, who were not parties to the suit. As a result of the addition of new parties and a new cause of action, the amendment is prejudicial on its face. The trial court did not abuse its discretion in refusing to consider the amendment and counterclaim/cross-claim and allow testimony on it. *See Chapin & Chapin, Inc. v. Texas Sand & Gravel Co., Inc.,* 844 S.W.2d 664, 665 (Tex.1992). Bishop's cross-point of error is overruled.

We now consider appellee Bishop's request for Rule 84 damages for filing of frivolous

appeal and for delay. Bishop requests this Court to award damages equalling ten times the total taxable cost as provided by Tex. R.App. P. 84, which provides in part:

> In civil cases where the court of appeals shall determine that an appellant has taken an appeal for delay and without sufficient cause, then the court may, as part of its judgment, award each prevailing appellee an amount not to exceed ten percent of the amount of damages awarded to such appellee as damages against such appellant. If there is no amount awarded to the prevailing appellee as money damages, then the court may award, as part of its judgment, each prevailing appellee an amount not to exceed ten times the total taxable costs as damages against such appellant. . . .

■ In determining whether an appeal has been taken for purposes of delay and without sufficient cause, this Court must review the record from the point of view of an advocate and ascertain whether appellant had reasonable grounds to believe that the case would be reversed. *McCraw v. Maris,* 837 S.W.2d 646, 652 (Tex.App.—Dallas 1990), *rev'd on other grounds,* 828 S.W.2d 756 (Tex. 1992).

■ Where appellant's statement, arguments, and cited authorities are minimal, and authorities cited only tenuously relate to appellant's claimed points of error, the appeal is frivolous, warranting award of a ten percent penalty under Rule 84. *Lewis v. Deaf Smith Elec. Coop., Inc.,* 768 S.W.2d 511, 514 (Tex.App.—Amarillo 1989, no writ). *See also Johnson v. Whitney Sand and Gravel, Inc.,* 828 S.W.2d 801, 806 (Tex.App.—Waco 1992, no writ). We believe our case to be analogous to *Lewis* and *Johnson,* in that appellant, Jim Arnold Corporation, has failed to bring forward evidence in the record to show reversible error. Appellant has failed to give proper address to any of the points of error regarding Bishop.

In reviewing appellant's brief, points of error, argument and authority, we fail to find any arguable point of error regarding appellee Bishop. Accordingly, damages totalling ten times the total taxable costs are hereby assessed against appellant and awarded to appellee Bishop.

Having overruled all of appellant's points of error, we affirm the judgment of the trial court.

AFFIRMED.

STOVER, Justice, concurring and dissenting.

Although I concur with the majority in overruling all of appellant's points of error, I respectfully dissent to the majority's decision to award ten times the total taxable costs as damages against JACOR and in favor of Bishop.

Rule 84 of the Texas Rules of Appellate Procedure authorizes us to award the prevailing appellee an amount not to exceed ten times the total taxable costs as damages against appellant if this Court determines an appellant has taken an appeal for delay and without sufficient cause. However, damages for taking appeal for delay and without sufficient cause should only be applied with prudence, caution, and after careful deliberation. *Morris v. Morris,* 894 S.W.2d 859, 865 (Tex. App.—Fort Worth 1995, no writ). In determining whether such delay damages should be imposed, the court of appeals must look at the case from the point of view of the advocate and determine whether he has reasonable ground to believe the case should be reversed. *Exxon Corp. v. Shuttlesworth,* 800 S.W.2d 902, 908 (Tex.App.—Houston [14th Dist.] 1990, no writ); *see also Apostolic Church v. Am. Honda Motor Co.,* 833 S.W.2d 553, 556 (Tex.App.—Tyler 1992, writ denied).

In the instant case, JACOR sued Bishop for breach of fiduciary duty, DTPA violations, tortious interference with business relationships, fraud, and malpractice. Although the trial court, through its directed verdict in favor of Bishop, found there was no evidence to support any of the claims against Bishop, appellant nonetheless had a reasonable basis to believe the directed verdict would be reversed because of Bishop's communications with the trial judge concerning Bishop's fees in the *Al Monsoori* litigation. According to testimony at trial, any fee to which Bishop was entitled would come out

of Matthews' fee.   Because of the agreement to that effect, Bishop's communications with the federal court judge concerning his fees was unwarranted since Bishop's fee agreement was with Matthews and no one else.   It was not unreasonable on the part of appellant to believe evidence of such conduct would constitute breach of fiduciary duty, tortious interference, and/or malpractice and would survive a directed verdict.

For that reason, I would affirm the judgment in overruling all of JACOR's points of error, but overrule Bishop's request under TEX.R.APP. P. 84 for damages against JACOR for taking an appeal for delay and without sufficient cause.