Duke L. SALISBURY, Trustee for the Estates of WCC Holding Corporation and World Cycle Corporation, Appellant,

v.

ARTHUR ANDERSEN & COMPANY, Appellee.

No. 04–95–00124–CV.

Court of Appeals of Texas, San Antonio.

Aug. 27, 1997.

Rehearing Overruled Sept. 22, 1997.

Jay L. Gueck, Olson Gibbons Sartain Nicoud Birne Sussman & Gueck, Dallas, for Appellant.

Richard B. Miller, Law Offices of Richard B. Miller, Houston, Richard Frankel, Bristow, Hackerman, Wilson & Peterson, Houston, Thomas C. Wright, Campbell, Harrison & Wright, L.L.P., Houston, for Appellee.

Before HARDBERGER, C.J., and RICKHOFF and PRESTON H. DIAL, Jr.,[1] JJ.

## OPINION

PRESTON H. DIAL, Jr., Justice (Assigned).

This is an appeal from the granting of a directed verdict in favor of defendant/appellee, Arthur Andersen & Company (Andersen) and against plaintiff/appellant, Duke Salisbury, Trustee for the bankrupt World Cycle Corporation (WCC).

Salisbury sued Andersen for damages arising from the negligent preparation of a year-end audit of WCC. Salisbury contended that Anderson was negligent in investigating the true financial position of the company and overstating the inventory and gross profit margin of WCC.

Gross profit margin is the difference, stated as a percentage, between the company's gross sales and the cost to the company for the goods it sold. An accurate count of the year-end inventory is critical to the determination of the cost of goods sold. An over valued inventory would result in an erroneously high gross profit margin.

The audit of WCC for fiscal year 1989 indicated a gross profit margin of forty-eight percent. It is conceded that the correct figure would have been thirty-nine percent. Salisbury contended that Andersen failed to verify the value of the year-end inventory, resulting in an incorrect gross profit margin.

At the close of the plaintiff's case, Andersen moved for a directed verdict. The grounds were that Salisbury had not offered credible evidence that any mistake in the audit was a cause in fact of any damages to WCC, and there was no evidence that WCC could have taken any action to avoid damages after it received the audit report. The motion for instructed verdict was granted.

This court stated in *University National Bank v. Ernst and Whinney,* 773 S.W.2d 707, 709–10 (Tex.App.—San Antonio 1989, no writ), that:

Where no evidence of probative force on an ultimate fact element exists or where the probative force of slight testimony is so weak that only a mere surmise or suspicion is raised as to the existence of essential facts, the trial court has the duty to instruct the verdict.

In reviewing an instructed verdict, the appellate court must consider all of the evidence in the light most favorable to the appellant and disregard all contrary evidence and inferences. *Vance v. My Apartment Steak House,* 677 S.W.2d 480, 483 (Tex.1984). We must also indulge the appellant every reasonable inference that may be properly drawn from the evidence. *Ortiz v. Santa Rosa Medical Ctr.,* 702 S.W.2d 701, 703 (Tex. App.—San Antonio 1985).

Andersen directs us to many places in the record evidencing weaknesses in WCC's operation and capital structure. We must disregard this evidence favorable to the movant for instructed verdict purposes and instead search for evidentiary facts, if any, supporting the issue of Andersen being the proximate cause of WCC's damages.

Proximate cause includes two elements: (1) cause in fact and (2) forseeability. *Williams v. Steves Indus., Inc.,* 699 S.W.2d 570, 575 (Tex.1985). Negligent conduct is a cause in fact of harm only if it is a substantial factor in bringing about the harm. *Texas & Pac. R.R. Co. v. McCleery,* 418 S.W.2d 494, 497 (Tex.1967).

WCC called Jack Wolfe as an expert witness. Wolfe had been a licensed CPA for over twenty years, including eight years as an auditor with Arthur Andersen. He had experience in "turnaround" or reorganization of companies in bankruptcy and had served as a trustee in bankruptcy. He testified that in his opinion the failure of Andersen to test the cost of goods sold and properly calculate the gross profit margin "was the primary cause of the business failure and damages resulting from the business failure." He further testified that Andersen should have been able to foresee that the audit failures would result in damage to WCC. Wolfe also testified that the company would have run its

---

**1.** Assigned to this case by the Chief Justice of the Supreme Court of Texas.

business differently if it had realized that the gross profit margin was thirty-nine percent rather than forty-eight percent. He stated he would have known what to do in that set of circumstances, though he did not know whether it would have been successful.

Michael Spratt, CEO of WCC, also testified. He has a bachelor's degree and a master's degree in business administration. He has a Ph.D. in marketing, statistics, and computer science. He testified that WCC made important decisions in 1989 based on the Andersen audit. These decisions had to do with the management of the company, controls of the company, expansion of the company, handling of employees, and handling of control systems or the lack thereof. He said the company made decisions concerning the security of its inventory based on the 1989 audit. No changes were made in the security system because of the audit.

Philip Tuttle, a director of WCC, testified. He is a CPA with a bachelor's degree in economics, and a master's degree in business administration. He stated that he relied upon the representations of Andersen that the gross profit margin was approximately forty-eight percent. He stated that if the gross margins had been as he believed them to be, the company, by a combination of cash flow from sales and the financing provided by him and others, could have continued its growth. The reasonable inference from his testimony is that necessary financing was available if the true facts were known.

David Lobell, a director of WCC, also testified. He is a graduate from the business school of Stanford University. He stated that the Andersen audit was defective in that the inventory was overstated and gross margins were overstated. When asked why the company went broke, he testified that the company had a massive write-down and had no way of replenishing its assets. He said, "I think it was because Arthur Andersen had not done a proper audit and indicated to the company back in April of '89 that it had an inventory shortage."

Considering all the evidence and inferences in the light most favorable to the appellant, we conclude that there is probative evidence in the record that the negligence of Andersen was a substantial factor in bringing about harm to WCC. There is also evidence that the resulting damages were foreseeable. We conclude that this evidence that Andersen proximately caused damages to WCC was sufficient to require the trial judge to submit that issue to the jury. Point of error number one is sustained.

The judgment of the trial court is reversed and the cause is remanded for further proceedings.